**HENNEPIN COUNTY WELFARE BOARD, Plaintiff,**

**Anita Elizabeth Boyer, Appellant,**

v.

**Stephen Guy AYERS, Respondent.**
**No. 50529.**

Supreme Court of Minnesota.

March 13, 1981.

Thomas L. Johnson, County Atty., James R. Albrecht and J. Michael Richardson, Asst. County Attys., Minneapolis, for appellant.

Lindquist & Vennum and Robert G. Mitchell, Jr., Minneapolis, for respondent.

Ronald Schneider, President, and Jean M. Gerval, St. Paul, for Minnesota County Attys. Council.

OTIS, Justice.

This is an appeal from a judgment entered by the District Court of Hennepin County following a verdict of acquittal in a paternity action.

The only issue is whether or not a blood test tending to confirm paternity was admissible. We hold that it was admissible and reverse.

In the spring of 1972 the plaintiff, Anita Boyer, and the defendant, Stephen Ayers, began an intimate relationship which resulted in the birth of a daughter, Alexandra, in September 1975, not the subject of this litigation. Ayers admitted paternity.

On Christmas Eve, 1976, Ayers had dinner at Boyer's apartment and later in the evening she went to his apartment where they had sexual intercourse. They did not again have intercourse. In September 1977 Boyer gave birth to a boy. This much the parties do not dispute. They disagree on the paternity of the second child.

Counsel for the parties agree that blood tests could be taken and if the results excluded paternity, in defense counsel's words, the county attorney "might well be satisfied to drop the prosecution of the case." They did not agree on the implications if the tests tended to confirm paternity by Ayers. The county attorney did not represent that the test results would be used only if they excluded paternity, and defense counsel did not assume that such a promise was made.

Defense counsel advised his client that he should take the blood tests, and that he had nothing to loose by taking it. He assumed that blood test results confirming paternity would not be admissible in evidence. One expert witness was of the opinion that the blood test results revealed a 99.9% probability that the defendant was the father of the plaintiff's child.

At the pre-trial conference, the county attorney moved to have the confirmatory blood test results admitted into evidence. The court sustained defendant's objection, without an explanatory memorandum.

This is a case of first impression in Minnesota. The techniques for obtaining confirmatory results have become available only recently. Three cases are pertinent, *Hanson v. Hanson*, 311 Minn. 388, 249, N.W.2d 452 (1977), *State ex rel. Ortloff v. Hanson*, 277 N.W.2d 205 (Minn.1979), and *Hepfel v. Bashaw*, 279 N.W.2d 342 (Minn. 1979).

In *Hanson v. Hanson*, blood test results were introduced to show that the plaintiff-husband was not the father of the defendant-wife's child. On that evidence the trial court granted the plaintiff-husband a dissolution of marriage and denied the defendant-wife support for the child. In affirming we quoted an opinion dealing with the weight to be given exclusionary results, a discussion that presumed the admissibility of exclusionary results and focused on the issue for which they would be relevant—nonpaternity. Thus, part of the quoted passage declares that "The [exclusionary] tests of course will be relevant only if they show non-compatability * * *." *Hanson v. Hanson*, 311 Minn. 388, 249 N.W.2d 452, 453 (1977) quoting *Anonymous v. Anonymous*, 1 A.D.2d 312, 316, 150 N.Y.S.2d 344, 348 (1956).

We decline to take that quotation out of context, to read "relevant only" to mean "admissible only" and to infer that in commenting narrowly on exclusionary "tests" we were actually speaking broadly of both exclusionary and confirmatory tests.

In the *Ortloff* case the defendant refused to submit to a blood test. Objections to his being questioned about the refusal were sustained. The jury found for the plaintiff. Defendant appealed, claiming that the very asking of those questions at trial had prejudiced his case. We affirmed the verdict on the grounds that it is not improper for a party to elicit evidence that the other party refused to submit to a blood test. In so doing, we noted that blood tests are the most reliable means by which an accurate and efficient determination of paternity can be made, and drew attention to the joint AMA–ABA guidelines on serologic testing. Those guidelines approve the use of blood tests and recommend that when the the tests do not exclude the putative father and he denies paternity "that certain scientific formulas be used to calculate the likelihood that he *is* the father." *State ex rel. Ortloff v. Hanson*, 277 N.W.2d 205, 207 (Minn.1979) (emphasis in original). We mentioned that accurate blood tests are now available at low cost in Minnesota, and added:

Minnesota does not have any statutory procedure specifically designed to meet the problem. Rule 35.01, Rules of Civil Procedure, does provide the court with authority to order a party to submit to a blood examination in an action in which the blood relationship of a party is in controversy, but we believe it would be helpful if the legislature would consider the entire matter of blood testing in the context of paternity actions.

*Id.* We did not intimate that without legislation courts are powerless to determine what evidence has probative value in resolving these difficult questions.

In *Hepful v. Bashaw*, 279 N.W.2d 342 (Minn.1979), we held that an indigent defendant is entitled to court-appointed counsel when the complainant-mother is represented by the county attorney and based our holding on our concern for obtaining an accurate determination of paternity. To that end we suggested to the legislature that a correct adjudication of paternity would also be "significantly furthered by providing for the availability and use of the blood-grouping tests currently available." *Id.* at 377. Since the admission of exclusionary results was already tending to become routine, our comments were aimed at the issue of *confirmatory* results. At the time the evidence in the instant case was offered and excluded a careful reading of our statutes and cases disclosed little to encourage a defendant to believe that blood tests results confirming paternity would be found by us to be inadmissible.

Two new statutes set out instances in which a court shall order the parties to submit to a blood test. Minn.Stat. 257.62, subd. 1 (1980) states:

The court may, *and upon request of a party shall*, require the child, mother, or alleged father to submit to *blood tests or genetic tests, or both.* The tests shall be performed by a qualified expert appointed by the court.

*Id.* (emphasis added).

Minn.Stat. § 257.64, subds. 1, 3 (1980) provides:

Subdivision 1. On the basis of the information produced at the pretrial hearing, the court may, and if requested by a party, shall evaluate the probability of determining the existence or nonexistence of the father and child relationship in a trial and whether a judicial declaration would be in the best interest of the child. On the basis of the evaluation, an appropriate recommendation for settlement shall be made to the parties * *

Subd. 3. If a party refuses to accept a recommendation made under subdivision 1 and blood tests have not been taken, the court *shall require* the parties to submit to blood tests, if practicable. Thereafter the court shall make an appropriate final recommendation. If a party refuses to accept the final recommendation the action shall be set for trial.

*Id.* (emphasis added).

■ The statutes specify the circumstances under which the taking of a blood test is mandatory, and the sanctions that a court may apply. They reinforce and implement the rules of evidence which were foreshadowed in *Hanson, Ortloff*, and *Hepfel*. Although the results of blood tests are not to be considered as conclusively binding on the factfinders, we hold that where a proper foundation is laid, blood test results that tend to confirm paternity are admissible in evidence, without prejudice, however, to a defendant's right to challenge the reliability of the test results and the test methods, and without prejudice to his right to have other tests taken on his own behalf.

Reversed and remanded for a new trial.