447 A.2d 965

**Patricia A. HUMMEL, Appellant,**

v.

**James C. SMITH.**

Superior Court of Pennsylvania.

Argued Dec. 15, 1981.

Filed July 2, 1982.

David J. Brightbill, District Attorney, Lebanon, for appellant.

Kenneth Sandoe, Myerstown, for appellee.

278

Before WICKERSHAM, BECK and POPOVICH, JJ.

WICKERSHAM, Judge:

On October 8, 1980 Patricia A. Hummel filed an action in the Court of Common Pleas of Lebanon County against James C. Smith, alleging that they were the parents of Jason Michael Hummel, age six, born July 4, 1974, which child was born out of wedlock at the Good Samaritan Hospital in Lebanon. Patricia alleged also that James C. Smith had broken off the relationship between them when she was five months pregnant with Jason. She alleged further that she had received support in March of 1980 when Smith gave $30.00 toward the purchase of a bike for Jason and finally she alleged he had also given her $3.00 for Jason in July of 1980 on his birthday. She sought support for the child.

James C. Smith filed an answer in which he denied paternity. In new matter, he alleged that the action was barred by the statute of limitations. Thereafter, James C. Smith, defendant, filed a motion for judgment on the pleadings pursuant to Pa.R.C.P. No. 1034.

At the time Jason was born, on July 4, 1974, the then appropriate procedure was to file a criminal action under and pursuant to the Act of 1972. This act provided in part:

§ 4323. **Neglect to support bastard**

(a) **Offense defined.**—A person is guilty of a misdemeanor of the third degree if he, being a parent, willfully neglects or refuses to contribute reasonably to the support and maintenance of a child born out of lawful wedlock, whether within or without this Commonwealth.

(b) **Limitation of action.**—All prosecutions under this section must be brought within two years of the birth of the child, except where the reputed father shall have voluntarily contributed to the support of the child, or shall have acknowledged in writing his paternity, in which case a prosecution may be brought at any time within two

years of any such contribution or acknowledgment by the reputed father.

18 Pa.C.S. § 4323.

The criminal statute was repealed by the Act of April 28, 1978, P.L. 106, No. 46, § 3 and replaced by section 6701 *et seq.* of Title 42, Judiciary and Judicial Procedure, of the Pennsylvania Consolidated Statutes, enacted by the Act of July 9, 1976, P.L. 586, No. 142, generally effective June 27, 1978.

When Patricia A. Hummel filed her complaint for support on October 8, 1980 Jason Michael Hummel was more than six years of age and the appropriate procedure for determination of paternity was the procedure set forth in 42 Pa.C.S. § 6701 *et seq.* The new statute of limitations embodied in 42 Pa.C.S. § 6704(e) provides as follows:

(e) **Limitation of actions.**—All actions to establish the paternity of a child born out of wedlock brought under this section must be commenced within six years of the birth of the child, except where the reputed father shall have voluntarily contributed to the support of the child or shall have acknowledged in writing his paternity, in which case an action may be commenced at any time within two years of any such contribution or acknowledgement by the reputed father.

By order of court dated February 9, 1981, the Honorable G. Thomas Gates, President Judge of Lebanon County, granted defendant's motion and directed the clerk of court to enter judgment in favor of defendant, James C. Smith, and against plaintiff, Patricia A. Hummel. This order was issued without having granted a hearing of any nature to the plaintiff. We reverse and remand.

■ President Judge Gates decided this case before this court announced its decision in *Williams v. Wolfe*, 297 Pa.Super. 270, 443 A.2d 831 (1982) (Dissenting Opinion by Wickersham, J.). In *Williams* this court held that failure to file an action under the now repealed criminal statute, 18 Pa. C.S. § 4323, does not preclude filing a complaint under 42

Pa.C.S. § 6701 *et seq.* Because the *Williams* court decided that the new statute created an independent remedy with a six year statute of limitation it is of no significance that Patricia A. Hummel did not file a criminal action under the repealed law.

Yet Hummel's complaint was filed more than six years after the birth of her child and even under the new statute of limitation her complaint would be categorically barred but for her allegation that she received contributions towards the child's support within two years of the date of the filing of her civil complaint. This allegation triggers application of the provisions of 42 Pa.C.S. § 6704(e) which states "an action may be commenced at any time within two years of any such contribution or acknowledgment by the reputed father."

Again after Judge Gates heard this case we handed down the case of *Jordan v. Gore*, 288 Pa.Super. 86, 431 A.2d 300 (1981), which involved similar circumstances. Appellant, Merlene Jordan, sought support for a child born to her on March 18, 1967 and instituted a criminal action against appellee, Joseph Gore, charging him with failure to support a bastard child. A trial on the charge was scheduled February 15, 1968, and a jury empaneled; however, the criminal charge was dismissed as appellant did not appear. More than ten years later, on August 15, 1978, appellant instituted a civil action against appellee for support of the same child, alleging, *inter alia*, contributions by the appellee to the child's support within the two years immediately preceding the commencement of the action. The lower court granted appellee's petition to dismiss, deciding that appellant's civil action created a situation of double jeopardy for the appellee. We held that the dismissal of the criminal action had no bearing on the subsequent civil proceeding and provided no basis for the appellee's attempt to avoid civil liability. We concluded:

> Finally, we cannot affirm the lower court's dismissal of this action based upon Appellee's citation of part of the support statute which states that such actions may only be

brought within six years of the birth of the child for whom support is sought. The remainder of that statute further permits such suits to be brought '. . . at any time within two years of any such contribution [of support to the child] or acknowledgment [of paternity] by the reputed father.' As noted earlier, the Appellant's Petition for Support alleged contributions by the Appellee to the child's support within a two year period immediately preceding the institution of her action. Thus, the dismissal of her Petition, without any examination of the evidence, on the specific basis apparently argued by Appellee in his memorandum, was not correct.

*Id.*, 288 Pa.Superior Ct. at 92–93, 431 A.2d at 303.

■ Therefore, Patricia A. Hummel should be allowed to prove her allegations of contribution. In *Atkins v. Singleton*, 282 Pa.Super. 390, 422 A.2d 1347 (1980) (opinion by Spaeth, J.), we said that the Commonwealth bears the burden of proving that the prosecution is within the statute of limitations. We pointed out, accordingly, that the Commonwealth (here Patricia A. Hummel) bore the burden of proving the alleged father had made some contribution to the child's support within two years of the complaint. We said:

However, while we reject appellant's argument concerning the necessity of evidence of a pattern of payments, we are persuaded that he is correct in maintaining that where only a single payment or contribution has been made, the evidence must show that it was made in circumstances from which it may reasonably be inferred that in making it, the father was recognizing the child as his own.

Section 4323(b) provides but two exceptions to the limitation period of two years from the birth of the child. These are either where the alleged father has 'voluntarily contributed to the support of the child,' or where he has 'acknowledged in writing his paternity.' Thus, voluntary contribution and acknowledgment of paternity are assimilated to each other. The plain implication is that the legislature regarded the one as essentially the same as the

other, and thus provided that proof of either would have the same effect of extending the period of limitations. It follows that if the evidence of the circumstances surrounding a voluntary contribution is insufficient to support a finding that the contribution amounted to an acknowledgment of paternity, it may not be held that the contribution extended the period of limitations. Thus, in *Commonwealth v. Young* [288 Pa.Super. 588, 419 A.2d 57], *supra,* the evidence of the circumstances surrounding the voluntary contribution of twenty dollars was held to have extended the period of limitations because it was sufficient to support a finding that the contribution amounted to an acknowledgment of paternity; the only reason the mother asked for the money, and the only reason the father paid it, was for the support of the child. *See Commonwealth v. Teeter,* [163 Pa.Super. 211, 60 A.2d 416] *supra* (letters of father indicated that payments were for child support). Similarly, in *Commonwealth v. Boyer, supra* [168 Pa.Super. 16, 76 A.2d 230], the evidence of the circumstances of the defendant's visit to the hospital and his payment there to the mother was sufficient to support the finding that the defendant was acting in compliance with a parental obligation and therefore was acknowledging paternity.

*Id.,* 282 Pa.Superior Ct. at 395–96, 422 A.2d at 1349–50.

Instantly, no hearing has been held in order to examine the evidence of Patricia A. Hummel as to the circumstances surrounding the two payments she alleges were made in 1980 towards the support of her child. Evidence of a single contribution of $10.00 has been held sufficient by cases interpreting the criminal statute of limitation. *Commonwealth v. Teeter,* 163 Pa.Super. 211, 60 A.2d 416 (1948). The evidence must show that the payments alleged by Patricia A. Hummel were made in circumstances from which it may reasonably be inferred that in making them, the father was recognizing the child as his own. Under the present posture of the record, Patricia A. Hummel has not yet had her day in court on that issue and we remand to give her such opportunity to prove her case.

Reversed and remanded for proceedings not inconsistent with this opinion.  Jurisdiction is relinquished.

BECK, J., files a concurring opinion.

POPOVICH, J., files a concurring statement.

BECK, Judge, concurring:

I concur in the majority's holding that the failure of Patricia A. Hummel to file an action under the now repealed criminal statute, Section 4323 of the Crimes Code, 18 Pa.C.S. § 4323, does not preclude her filing a civil complaint pursuant to Sections 6701–13 of the Judicial Code, 42 Pa.C.S. §§ 6701–13.  *Williams v. Wolfe,* 297 Pa.Super. 270, 443 A.2d 831 (1982).

However, careful consideration of the Equal Protection Clause of the United States Constitution, as well as the Pa.Const. art. I, § 26, compels me to adopt the position suggested by Justice Sandra Day O'Connor in *Mills v. Habluetzel,* —— U.S. ——, 102 S.Ct. 1549, 71 L.Ed.2d 770 (1982) (O'Connor, J., concurring, with three justices joining the entire concurrence and with Powell, J., joining all but the last paragraph of the concurrence and concurring separately) and espoused by Judges Brosky and Popovich in *Wolfe* (reiterated by Judge Popovich in the instant case), that where a paternity suit stems from a support action on behalf of an illegitimate child, the paternity suit may not be barred during the child's minority by a statute of limitations.

In paternity suits the court must reconcile three distinct, and often competing, interests—the interests of the illegitimate child, the interests of the alleged father, and the interests of the state.

The private interests implicated here are substantial. Apart from the putative father's pecuniary interest in avoiding a substantial support obligation and liberty interest threatened by the possible sanctions for noncompliance, at issue is the creation of a parent-child relationship. This Court frequently has stressed the importance of familial bonds, whether or not legitimized by marriage,

and accorded them constitutional protection. *See Stanley v. Illinois*, 405 U.S. 645, 651–52 [92 S.Ct. 1208, 1212–13, 31 L.Ed.2d 551] ... (1972) .... Through the judicial process, the State properly endeavors to identify the father of a child born out of wedlock and to make him responsible for the child's maintenance. Obviously, both the child and the defendant in a paternity action have a compelling interest in the accuracy of such a determination.

.....

The State admittedly has a legitimate interest in the welfare of a child born out of wedlock who is receiving public assistance, as well as in securing support for the child from those legally responsible. In addition, it shares the interest of the child and the defendant in an accurate and just determination of paternity ....

*Little v. Streater*, 452 U.S. 1, 14, 101 S.Ct. 2202, 2209, 68 L.Ed.2d 627, 637 (1981) (unanimous decision) (footnote deleted).

Historically, a statute of limitations has been invoked in paternity suits to promote "an accurate and just determination of paternity," *id.*, by "preventing the prosecution of stale and fraudulent claims ...." [1] *Habluetzel* at ——, 102 S.Ct. at 1556, 71 L.Ed.2d at 780 (O'Connor, J., concurring). Consequently, the arguments favoring a statute of limitations have been that with the passage of time evidence either becomes unreliable as witnesses' memories fade or becomes unavailable as witnesses move to foreign jurisdictions and photographs or documents are misplaced or destroyed. *Id.* at —— n.9, 102 S.Ct. at 1556 n.9, 71 L.Ed.2d at 779 n.9.

But as the United States Supreme Court observed in *Streater*, the strength of these arguments has been dramati-

1. In *Mills v. Habluetzel*, —— U.S. ——, 102 S.Ct. 1549, 71 L.Ed.2d 770, 780 (1982) (O'Connor, J., concurring) the putative father "set forth a number of 'state of interests' to justify the one-year [Texas] statute of limitation, but the Court accepts only one of these as permissible—the interest in preventing stale or fraudulent claims."

cally attenuated by recent technological advances in ascertaining parentage through comparisons of gene frequencies in blood group tests.[2]

The ability of blood grouping tests to exonerate innocent putative fathers was confirmed by a 1976 report developed jointly by the American Bar Association and the American Medical Association. Miale, Jennings, Rettberg, Sell & Krause, *Joint AMA–ABA Guidelines: Present Status of Serologic Testing in Problems of Disputed Parentage*, 10 Fam.L.Q. 247 (1976). The joint report recommended the use of seven blood test 'systems'—ABO, Rh, MNS, Kell [K, k], Duffy [Fy$^a$, Fy$^b$], Kidd [Jk$^a$, Jk$^b$], and HLA [Human Leucocyte Antigen]—when investigating questions of paternity. *Id.* at 257–58. These systems were found to be 'reasonable' in cost and to provide a 91% cumulative probability of negating paternity for erroneously accused Negro men and 93% for white men. *Id.* at 254, 257–58.

. . . The importance of that scientific evidence is heightened because '[t]here are seldom accurate or reliable eye witnesses since the sexual activities usually take place in intimate and private surroundings, and the self-serving testimony of a party is of questionable reliability . . . .'

. . . .

. . . [B]ecause of its recognized capacity to definitively exclude a high percentage of putative fathers, the availability of scientific blood test evidence clearly [is] a valuable procedural safeguard . . . . Unlike other evidence that may be susceptible to varying interpretation or disparagement, blood test results, if obtained under proper

2. In the 1930's ABO blood testing which produced a probability of exclusion from paternity of merely 13.4% was introduced into evidence in paternity suits. Ellman & Kaye, *Probabilities and Proof: Can HLA and Blood Group Testing Prove Paternity?*, 54 N.Y.U.L.Rev. 1131, 1136 (1979). Today gene frequency statistics are available for 25 blood groups, and use of seven blood group tests yields a cumulative probability of exclusion greater than 90%. Lee, *Current Status of Paternity Testing*, 14 Fam.L.Q. 615, 627 (1975).

conditions by qualified experts, are difficult to refute
. . . .

*Id.* at 633–37 (footnotes deleted) (citations omitted).[3,4]

Pennsylvania has long accepted the utility and accuracy of blood group tests as a means of establishing non-paternity. [T]he first of the many thousands of reported cases in America on this subject (according to 163 A.L.R. 940) is *Commonwealth v. Zammarelli*, 17 Pa.D. & C. 229 (1931), in which the late Judge Morrow, of Fayette County, granted the defendant a new trial in a bastardy case because the uncontradicted evidence of a medical expert called by the

**3.** Each blood group yields a particular probability of exclusion from paternity. "The cumulative chance of exclusion is not equal to the sum of individual chances . . . . Since a person cannot be excluded more than once, the cumulative chance of exclusion . . . is the sum of the exclusions in [the blood groups tested] minus their product . . . ." Lee, *supra* at 628–29. Thus, the cumulative probability of exclusion varies with the type and number of blood groups tested. For example, whereas the joint AMA–ABA guidelines reported a cumulative probability of exclusion of 93% for white men based upon testing seven blood groups, testing a different combination of seven blood groups [21 HLA genetic markers; MNS; D,C,$C^w$,c,E,e; AcP (A,B,C); $A_1,A_2,B,O$; $Glm^a,Glm^x,G3m^b$; $Jk^a,Jk^b$ (Kidd) ], as reported by Lee, yielded a cumulative probability of exclusion of 95.5%. *Id.* at 627.

**4.** The HLA (Human Leucocyte Antigen) system is among the most sophisticated and valuable parentage research tools.

The HLA system is the most complex genetic system known in man. It consists of, at a minimum, hundreds of closely linked genes that function in determining the susceptibility to certain diseases, the immune response, and the rejection of transplanted tissue . . . . [T]he factors expressed by the HLA genes are present in most cells, and HLA testing can be thought of as tissue typing rather than blood group typing.

Since many combinations of the numerous antigens, or genetic markers, in the HLA system . . . occur very infrequently in the population at large, HLA typing excludes a high proportion of falsely accused defendants. A man is excluded if he and the mother both lack an antigen which the child has, or if the child lacks an antigen which any offspring of the defendant and the mother would necessarily possess . . . .

Ellman & Kaye, *supra* at 1138–39 (footnotes deleted). Lee states that by itself the HLA system yields a 76% chance of exclusion from paternity. Lee, *supra* at 627. "[T]he introduction of the HLA blood test serves to minimize the effect of the passage of time on paternity determinations by shifting the weight of the evidence to one side." *Commonwealth ex rel. Atkins v. Singleton*, 282 Pa.Super.Ct. 390, 405, 422 A.2d 1347, 1355 (1980) (Brosky, J., dissenting).

defendant was that blood tests showed the defendant could not have been the father of the child.

*Commonwealth v. Coyle*, 190 Pa.Super.Ct. 509, 512, 154 A.2d 412, 413 (1959), *allocatur refused*, November 24, 1959; *Commonwealth v. Gromo*, 190 Pa.Super.Ct. 519, 154 A.2d 417 (1959) (validity of A–B–O, M–N, Rh–Hr blood tests).

Modern Pennsylvania paternity suits are governed by the Uniform Act on Blood Tests to Determine Paternity ("Act"), 42 Pa.C.S. §§ 6131–37, which was enacted "in the belief that such [blood] tests, which make possible a scientifically reliable determination excluding paternity, may be helpful in those actions 'in which paternity ... is a relevant fact ...'" *Adoption of Young*, 469 Pa. 141, 147, 364 A.2d 1307, 1310 (1976) (footnote deleted). Pursuant to Section 6136 of the Act,

> [i]f the court finds that the conclusions of all the experts as disclosed by the evidence based upon the [blood] tests are that the alleged father is not the father of the child, the question of paternity, parentage or identity of a child shall be resolved accordingly. If the experts disagree in their findings or conclusions, the question shall be submitted upon all the evidence.

Nevertheless, Section 6704(e) ["Limitation of actions"] of the Judicial Code, 42 Pa.C.S. § 6704(e), as construed by the majority, ignores the heightened predictability of current blood testing and fosters disparate treatment of illegitimate and legitimate children whereby an illegitimate child's right to receive support from his natural father may be foreclosed by (1) the failure to institute a paternity suit on the child's behalf [5] within six years of the child's birth, (2) the failure of the father thereafter to acknowledge (in writing) the child or to contribute to the child's support (although the father's

---

5.  Section 6704(b) of the Judicial Code provides that

    [a] complaint may be filed by any person ... to whom a duty of support is owing. It shall be filed on behalf of a minor child by a person having custody of the minor .... It may be filed by any public body or public or private agency having any interest in the care, maintenance or assistance of any person to whom a duty of support is owing.

inaction may have resulted from the mother's failure to notify the father of his parenthood), and (3) the failure to bring a paternity suit on the child's behalf [6] within two years of a written acknowledgement or support contribution from the father.  Thus, while the child may be too young to understand his status and potential rights as an illegitimate, the child's claim to support from his natural father may be defeated by inaction which the child can neither protest nor influence.

As Judge Brosky stated in his *Wolfe* concurrence,

[t]here can be no doubt that both the mother and father of a child born out of wedlock have the duty to support such child.  *Commonwealth v. Rebovich*, 267 Pa.Super.Ct. 254, 406 A.2d 791 (1979).  To subject a child born out of wedlock to a limitation period, however reasonable, is to limit that child's unqualified right to receive support from his father.  As other jurisdictions have found, such limitation upon an illegitimate child's right to receive support violates the Equal Protection clause of the United States Constitution.

*Wolfe*, 297 Pa.Super.Ct. at 280, 443 A.2d at 836; *Norris v. Beck*, 282 Pa.Super.Ct. 420, 422 A.2d 1363 (1980).

Addressing the issue of disparate treatment of illegitimates, the United States Supreme Court has repeatedly found unconstitutional several state statutes which discriminate against illegitimates.  For example, the rights of illegitimates became coextensive with those of legitimates in recovering damages in wrongful death actions [*Weber v. Aetna Casualty and Surety Co.*, 406 U.S. 164, 92 S.Ct. 1400, 31 L.Ed.2d 768 (1972)], in collecting insurance proceeds as a beneficiary under a state's workman's compensation system [*Gomez v. Perez*, 409 U.S. 535, 93 S.Ct. 872, 35 L.Ed.2d 56 (1973)], and in asserting the right to support from the natural father [*Lalli v. Lalli*, 439 U.S. 259, 99 S.Ct. 518, 58 L.Ed.2d 503 (1978)].

**6.**  See footnote 5, *supra.*

Beck, *Nontraditional Lifestyles and the Law*, 17 J.Fam.L. 685, 694 (1978–79); *see also Commonwealth ex rel. Atkins v. Singleton*, 282 Pa.Super.Ct. 390, 405–06, 422 A.2d 1347, 1355 (1980) (Brosky, J., dissenting).

Since the statute of limitations controlling a paternity suit effectively bars the right of an illegitimate child to have a support action against his natural father initiated throughout the child's minority and since the support claims of a legitimate child can be raised throughout the child's minority, Section 6704(e) of the Judicial Code unconstitutionally abridges an illegitimate child's right to parental support. *Id.*, 282 Pa.Superior Ct. at 404, 422 A.2d at 1354 (Brosky, J., dissenting). Accordingly, I concur.

POPOVICH, Judge, concurring:

I agree with the result reached by the majority today. As this writer has stated previously in *Williams v. Wolfe*, 297 Pa.Super. 270, 443 A.2d 831 (1982) (Popovich, J. Concurring Statement), no statute of limitations constitutionally can preclude a child from asserting parenthood during his minority.