458 A.2d 562

**Mary K. TUREK, Appellant,**

v.

**Albert HARDY.**

Superior Court of Pennsylvania.

Submitted June 16, 1982.

Filed March 25, 1983.

Steve Peter Leskinen, Uniontown, for appellant.

Thomas P. Ruane, Jr., Uniontown, for appellee.

Before BROSKY, JOHNSON and MONTGOMERY, JJ.

BROSKY, Judge:

The sole issue before us in this paternity action is whether the lower court erred in ruling that the results of a Human Leukocyte Antigen (HLA) test could not be used to prove paternity. Because we conclude that such test results are admissible as some proof of paternity, we reverse and remand.

The record in this case discloses that prior to trial, appellee Hardy petitioned the court to order appellant Turek and her child to submit to blood tests in order to determine whether he could be excluded as the father. Such an order was entered on June 30, 1980.

On July 1, 1980, appellant, appellee and their attorneys signed a written stipulation that the

> results of certain biochemical tests and blood grouping test (viz. HLA Test and Red Cell Test) to be performed at the University of Pittsburgh Paternity Testing Laboratory, shall be admissible at any trial of this matter without the necessity of calling any expert or custodian of records
> . . .

At trial, appellant attempted to introduce blood test results and certain expert testimony, but an objection to this evidence was sustained. The jury trial resulted in a verdict

for appellee, Albert Hardy, and this appeal followed the denial of a motion for new trial.

It is clear that the admission or exclusion of evidence is within the sound discretion of the trial court and the exercise of such discretion will be reversed on appeal only for a clear abuse. *Catina v. Maree*, 272 Pa.Super. 247, 415 A.2d 413 (1980); *Zadogna v. Hester*, 255 Pa.Super. 517, 388 A.2d 1087 (1978).

The lower court explained in its opinion that its decision to exclude the proffered evidence was based on its belief that such evidence must be made admissible in the first instance by the Legislature.

■ The "Uniform Act on Blood Tests to Determine Paternity"[1] does permit the introduction of blood test results that exclude a defendant as a possible father and in fact provides that blood tests can serve as conclusive evidence of non-paternity. See 42 Pa.C.S.A. § 6136. The statute as enacted in Pennsylvania does not address the question of whether blood test results that show that a defendant is likely to be the father are admissible as proof of paternity. Such a provision was a part of the Uniform Act but was not enacted by our Legislature. We believe, however, that such results are admissible under the current state of the law.

■ Although the trial record itself is not clear as to the type of blood test which was at issue, in this case, the previously discussed stipulation and the opinion of the lower court indicate that appellant sought the introduction of the results of HLA blood tests which indicated a probability that appellee is the father of the child.

Unlike traditionally accepted blood tests which involve testing of the red blood cells, HLA, "Human Leukocyte Antigen" involves tissue typing of white cell blood groups. Prior to the advent of HLA testing, the results of blood tests were used solely to exclude those defendants whose blood tests indicate they could not be the father of the child

1. Act of July 9, 1976, P.L. 586, No. 142, § 2; 42 Pa.C.S.A. § 6131 et seq.

in question. However, HLA test results can be used to calculate the probability that a putative father is the actual father. Dr. Terasaki notes in his article, "Resolution by HLA Testing of 1,000 Paternity Cases Not Excluded By ABO Testing," (1977–78), 16 J.Fam.L. 543, "With HLA testing, the probability of a non-excluded male being the actual father is usually over 90%."

It seems clear that the testing procedure, which evolved from the tissue typing necessary for organ transplants, provides an enhanced ability to identify the father of a child. For discussion of the reliability of HLA testing, alone or in combination with other blood group tests, see the following articles. Williford, "The Use of Blood Tests in Actions to Determine Paternity," (1980) 16 *Wake Forest Law Review* 591 (which explains the system's advantages and "pitfalls". For example, the author observes that the HLA test may not exclude a putative father who would be excluded by red cell tests, if the accused and real father are related; "Proving Paternity By Means of Serological Testing: Should It Be admitted As Evidence By The Courts?" (1981), *Detroit College of Law* Review 47; "Joint AMA–ABA Guidelines: Present States of Serologic Testing in Problems of Disputed Parentage" (1976) 10 *Fam.L.Q.* 247 (which advocates the combined use of HLA and red blood test for greatest reliability); Terasaki, *supra.*[2]

Our examination of the current literature and case law of other jurisdictions cited herein leads us to conclude that HLA testing has been found to be a reliable technique. We turn next to the question of whether such test results are relevant to a determination of paternity.

We explained in *Whistler Sportswear, Inc. v. Rullo,* 289 Pa.Super. 230, 433 A.2d 40, 47 (1981):

2. As to the reliability of HLA tests, see also *Mills v. Habluetzel,* 456 U.S. 91, 102 S.Ct. 1549, 71 L.Ed.2d 770 (1982) (O'Connor, J., concurring with 3 Justices joining the Concurring Opinion and Justice Powell joining all but the final paragraph), n. 2; *Hummel v. Smith,* 301 Pa.Super. 276, 447 A.2d 965 (1982); *Malvasi v. Malvasi,* 167 N.J.Super. 513, 401 A.2d 279 (1979).

Pennsylvania finds evidence relevant "when it tends to establish facts in issue" *Leroi v. Civil Service Commission of City of Philadelphia*, 34 Pa.Cmwlth. 190, 382 A.2d 1260 (1978), or when it "in come (sic) degree advances the inquiry and thus has probative value," *Bowers v. Garfield*, 382 F.Supp. 503, aff. 503 F.2d 1398 (3rd Cir.1974).

Test results that indicate the likelihood that one is the father of a child certainly advance the inquiry as to that child's paternity and are therefore of probative value. See also *Hennepin City Welfare Bd. v. Ayers*, Minn., 304 N.W.2d 879 (1981); *Carlyon v. Weeks*, 387 So.2d 465 (Fla. App.1980), in which cases the courts also concluded that HLA results are relevant to the issue of paternity.

In *Cramer v. Morrison*, 88 Cal.App.3d 873, 153 Cal.Rptr. 865 (1979), the California court concluded that the results of HLA testing are probative of the issue of paternity. The court applied a relevance test similar to that applicable in Pennsylvania.

In *Cramer*, the defendant had argued that even though such evidence might be found probative, it should be found inadmissible because California had adopted the "Uniform Act on Blood Tests to Determine Paternity" absent a provision that would have permitted the use of blood tests to prove paternity. Appellee in the present case similarly contends that the failure of our Legislature to include such a provision should render the evidence inadmissible.

The *Cramer* court noted that its blood test statute was enacted prior to the development of HLA and only shortly after the acceptance of the Landsteiner series (red blood cell tests). The court concluded that the Legislature's reference to blood tests in enacting the statute referred to the Landsteiner series. Therefore, the court declined to consider the omission of the provision allowing affirmative use of blood tests, as rejection of affirmative use of HLA results.

The Uniform Act was enacted in Pennsylvania in 1961 [3] and was reenacted as part of the Judiciary Act of 1976.[4] We conclude as the California court did, that rejection of the affirmative use of blood test results by the Legislature was not a rejection of the HLA test, which was at that time a not yet accepted scientific method.

We agree with the reasoning of the California Court of Appeals in *Cramer* and have concluded that the absence in the Uniform Act of a provision allowing introduction of blood test results to prove paternity does not preclude their introduction on general grounds of relevance.[5]

Furthermore, as the *Cramer* court noted, public policy considerations also support the admissibility of such evidence. These considerations include protecting children from the stigma of illegitimacy, preservation of the family, and insuring that individuals rather than the government bear responsibility for child support. *Cramer, supra,* at 885; 153 Cal.Rptr. at 872.

We emphasize, however, that our holding is limited to the conclusion that HLA blood test results may be introduced as some evidence of paternity. We do not hold that this evidence is conclusive. For a similar holding, see *Chumley v. Hall,* 601 S.W.2d 803 (Tex.App.1980).[6] See also Williford, *supra.*

■ We have indicated earlier that our review of applicable case law and secondary literature leads us to the conclusion that HLA testing is generally accepted as reliable.

3. The present statute is a reenactment of the Act of July 13, 1961, P.L. 587, No. 286, § 9; 28 P.S. § 307–9.

4. Act of July 9, 1976, P.L. 586, No. 142, § 2.

5. See *In Re Mengel,* 287 Pa.Super. 186, 429 A.2d 1162 (1981) (Concurring Opinion of Spaeth J.), in which Judge Spaeth advocates that HLA test results be used to establish paternity.

6. See also 42 Pa.C.S.A. § 6136 which provides that if all experts agree that blood tests exclude a defendant as a possible father, the question of paternity is to be resolved accordingly. Absent a legislatively enacted provision making positive blood tests also conclusive, we must view them as only part of the evidence.

Nevertheless, before the results of such a test are admissible, a proper foundation must be laid. Indeed, it is axiomatic that a foundation must be laid for the admission of any evidence.

In *Phillips By and Through Utah, Etc. v. Jackson,* Utah, 615 P.2d 1228 (1980), the Utah Supreme Court refused to find HLA test results admissible because a proper foundation had not been laid. The court refused to find the test reliable on the basis of journal articles and what it considered the paucity of legal opinions on point. While we believe that, two years later, the reliability of HLA testing has been established, we do agree with the Utah court's view that a foundation must be laid in each case. We have derived the following guidelines from the *Phillips* opinion as a starting point in the establishment of a proper foundation.

The party seeking to affirmatively use the HLA results should show:

1. the effect of racial and ethnic variables
2. any factors which might invalidate the test or affect its accuracy (for example, the AMA–ABA Guidelines indicate that HLA results are most reliable when the test is conducted in conjunction with other blood group tests.)
3. The procedures of the actual test.
4. The qualifications of witnesses.

Of course, the foundation laid must suit each case and we do not consider these guidelines exhaustive. Furthermore, our holding that these test results are admissible is without prejudice to a defendant's right to challenge the reliability of the results and test methods in an individual case. See *Hennepin City Welfare Board,* supra.

For the foregoing reasons, we conclude that when a proper foundation is laid, the results of HLA blood tests are admissible to prove the likelihood of paternity.

Order reversed and case remanded for new trial consistent with this opinion.

JOHNSON, J., files a concurring opinion.

JOHNSON, Judge, concurring:

I agree wholeheartedly with those portions of the excellent opinion of Judge Brosky which conclude (a) that HLA testing has been found to be a reliable technique, (b) that such tests are relevant to a determination of paternity, and (c) that HLA blood test results may be introduced as some evidence of paternity. I also agree that when a proper foundation has been laid, the results of such tests are admissible to prove the likelihood of paternity without prejudice to the party's right to challenge the reliability of either the test methods or the results in an individual case.

The careful analysis of the various standards which should determine the admissibility of scientific evidence in paternity cases, as set forth by Justice Stewart speaking for the majority of the Supreme Court of Utah in *Phillips v. Jackson,* Utah, 615 P.2d 1228, 1233–36, 1237–38 (1980), leads me to conclude that we should either refrain altogether from pronouncing guidelines which, in the majority opinion, seek merely to form a "starting point in the establishment of a proper foundation," or we should attack the problem more broadly with a view to providing the trial court and the practicing bar with guidelines as nearly complete as may be possible.

While I do not necessarily disagree with the four factors set forth in the majority opinion, I have some concern that their inclusion, to the exclusion of other factors, might result in undue, or inappropriate, emphasis being afforded those listed.

In the final analysis, the trial court is vested with a large measure of discretion in determining whether the scientific evidence and conclusions of an expert are admissible. It is not clear to me that the formulation of special rules to govern admissibility of HLA blood test results—as distinguished from other scientific evidence—serves either our adversary system of justice or the parties involved. I would prefer to leave to our trial courts the admittedly difficult task of formulating any special rules which may be required, secure in the belief that our appellate system

remains available to guard against manifest abuse which results in prejudice to either contending party.