500 A.2d 125

**Bonita M. OLSON**

v.

**Edward J. DIETZ, Appellant.**

Superior Court of Pennsylvania.

Submitted July 17, 1985.

Filed Oct. 18, 1985.

2

Samuel E. Teeter, Gettysburg, for appellant.

Roy Alan Keefer, Assistant District Attorney, Gettysburg, for appellee.

Before TAMILIA, JOHNSON and HOFFMAN, JJ.

JOHNSON, Judge:

This appeal asks us to review the validity of a jury charge on the evidentiary value of red cell and Human Leukocyte Antigen (HLA) test results in determining paternity. Appellant also invites us to reconsider our holding in *Turek v. Hardy*, 312 Pa.Super. 158, 458 A.2d 562 (1983) which found such test results to be admissible to prove the likelihood of paternity. Finding no error in the charge as submitted to the jury, and being unpersuaded by Appellant's arguments to reconsider *Turek v. Hardy*, we affirm.

On June 6, 1983 Appellee, Bonita M. Olson, filed a complaint for child support naming Appellant, Edward J. Dietz, as the father of Scott A. Olson who was born on June 30, 1982. At a support conference held on June 16, 1983,

however, Appellant denied paternity of the child, and requested a jury trial on that issue. Appellant agreed, at this support conference, to submit to cell and HLA typing tests for the purpose of determining whether he could be excluded as the father of the child.

On July 7, 1983 blood samples of Appellant, Olson and the child, drawn the previous day, were subjected to red blood cell and HLA blood testing at the Baltimore RH Typing Laboratory in Baltimore, Maryland. A letter from the laboratory to the Domestic Relations Office indicated that, based upon those tests, Appellant could not be excluded as the father of the child. The letter also included two other formulations: a "paternity index" of 110 to 1 and a "plausibility of paternity" of 99.10%.

One commentator has described the exclusion and inclusion procedures thus:

...The exclusion procedure comprises the identification of certain genetic markers in the blood of the mother, child, and putative father; followed by the application of "Mendelian rules of inheritance" to determine whether it would be genetically impossible for the accused to be the biological father. An exclusion may occur in two ways. First, the child may possess a genetic characteristic which had to have come from someone other than the defendant. Second, the child may lack a genetic marker that he would have to possess if the accused were the father. In either of these situations, the defendant is conclusively proved innocent without any statistical estimations. In many cases, the possibility of exclusion may approach 99% when several genetic marker systems are used. The credibility of the exclusion method is beyond reproach in the scientific community, and most courts will accept results indicating non-paternity as conclusive proof.

...Basically, the inclusion procedure commences where the exclusion procedure terminates. In other words, when the typing stage (the method described above as the "exclusion method") fails to exclude the accused, a statistical estimation of his "likelihood of paternity" is calculat-

ed. This calculation entails the use of a probability formula known as the "Essen-Moller" version of the "Bayes' Theorem." A simplified version of this formula may be summarized as follows: The ratio of the likelihood that the accused contributed certain genetic characteristics identified in the child, to the likelihood that one other "random man" contributed them. The "random man" variable is derived from the estimated frequencies of the particular characteristics in the relevant population. The ratio yielded by the Bayes' formula, called the "paternity index," is converted into a percentage value, "the likelihood of paternity," which is then presented to the trier of facts.

Case Comment, *Human Leukocyte Antigen Test Results Are Admissible in Paternity Cases to Show the Likelihood of Paternity. Turek v. Hardy, 312 Pa.Super. 158, 458 A.2d 562 (1983),* 88 DICK.L.REV. 565, 567–69 (1984) (footnotes omitted).

Before the trial was scheduled to commence, Appellant filed a Motion to Exclude Red Cell and HLA Test Results as Affirmative Evidence of Paternity, which motion the trial court denied; and, at trial, two technologists from the laboratory were permitted to introduce testimony concerning the "paternity index" and "plausibility of paternity." Appellant's motion for non-suit, his subsequent request for a directed verdict, and certain points for charge were refused by the trial court as well.

Appellant timely filed post-trial motions which were dismissed by the trial court, and the Domestic Relations Officer was thereby directed to schedule the case for a hearing. An order for weekly child support was subsequently issued on February 6, 1985. This appeal followed.

█ Appellant first questions whether the trial court erred when it denied his motion to exclude the red cell and HLA test results as affirmative evidence of paternity. In *Turek v. Hardy,* 312 Pa.Super. 158, 458 A.2d 562 (1983) this Court held that blood test results which show that a defendant is likely to be the father are admissible as some proof of

paternity. We there said that, before the results of such testing are admissible, a proper foundation must be laid. Appellant does not attack the foundation upon which the evidence was presented, but argues that the test results should have been excluded since their probative value was substantially outweighed by the danger of confusion or unfair prejudice to Appellant. Since this Court has already determined that such test results are admissible, and since our review of the record on this appeal does not disclose any support for Appellant's assertion regarding unfair prejudice or confusion, we conclude that this first issue is without merit.

■ Appellant next challenges the refusal of the trial court to give two of his requested points for charge. In evaluating a claim of erroneous instructions to the jury, we must analyze the court's charge in its entirety. *Bohner v. Stine*, 316 Pa.Super. 426, 463 A.2d 438 (1983); *Crotty v. Reading Industries, Inc.*, 237 Pa.Super. 1, 345 A.2d 259 (1975). If a legally valid requested point for charge is sufficiently and adequately covered in the trial court's instructions to the jury, it is appropriate to deny the request. *Bohner v. Stine, supra. See also Donaldson v. Sepesy*, 415 Pa. 194, 202 A.2d 823 (1964); *Morris v. Moss*, 290 Pa.Super. 587, 435 A.2d 184 (1981).

Appellant contends that the trial court erred in refusing to instruct the jury, as requested, on the issue of evidentiary value of the red cell and HLA test results. Appellant's requested points for charge Nos. 4 and 6, and the trial court's charge regarding them, were as follows:

REQUEST: 4. In any event, you must understand that the red cell and HLA test results supply no more than statistical or probabilistic proof—indices of estimates of reality, not direct proofs of reality. The red cell and HLA test results are not circumstantial evidence of sexual intercourse between Ms. Olson and Ed Dietz, nor circumstantial evidence of the likelihood of conception by virtue of any such sexual intercourse between Ms. Olson and Ed Dietz. Those statistical results are no substitute for your

evaluation and findings as to whether the sexual relations of Ed Dietz with the Plaintiff occurred during the period of time in which Scott Olson could have been conceived, according to the usual laws of nature, and whether that sexual contact was the direct cause of her pregnancy.

REQUEST: 6. [If the Court does not exclude the HLA tests as affirmative evidence of paternity] Evidence of the HLA blood test has been introduced and, based on that evidence an opinion has been expressed concerning the degree of probability that Mr. Dietz is the father of the child. You must bear in mind that the probability of paternity results of such tests are in part based upon certain underlying assumptions, including the assumption that there is a 50% chance that Mr. Dietz is the child's father, and a 50% chance that a random man is the child's father. You must therefore bear in mind that neither the making of such an assumption, nor the probability of paternity results, constitute any evidence that Mr. Dietz had sexual intercourse with Ms. Olson at or about the time Scott A. Olson was conceived. Therefore, in determining whether Mr. Dietz had sexual intercourse with Ms. Olson at or about the time when, according to the usual laws of nature, the child was conceived, you must disregard the probability of paternity results. If the Plaintiff has failed to prove to your satisfaction by a preponderance of the evidence independently of the probability of paternity results that Mr. Dietz had sexual intercourse with Ms. Olson at or about the time when, according to the usual laws of nature, the child was conceived, then regardless of the HLA probability of paternity results, you must find that Mr. Dietz is not the father of Scott A. Olson.

CHARGE: ... You will have to determine two things basically in determining whether or not the verdict should be is or whether it should be is not. The first thing that you will have to find by a fair weight or preponderance of the evidence is that Bonita Olson and Edward Dietz had

sexual intercourse at a time in which conception could have occurred.

. . . .

The second issue that you would determine would be whether as a result of that act of sexual intercourse a conception occurred whereby the life of Scott A. Olson came into being. With respect to that issue, you've heard the testimony of Miss Olson that that's the time she got pregnant. Dr. Hammett, again his testimony is relevant and the testimony of Margaret Brooks and of Terry Houtz giving you the results of the HLA and red corpuscle blood test results.

I will talk to you in a little more detail about the results of those tests but the issues are somewhat independent, members of the panel, and I would suggest to you that you approach this case from a logical standpoint. Determine whether the act of sexual intercourse occurred. Then determine whether the act of sexual intercourse occurred during the time that pregnancy could have resulted as a result of that. If you find that those answers are yes, then you should go on to consider the result of the HLA and red corpuscle or red cell blood test. The results of those tests do not, of course, prove that intercourse occurred and they do not prove that intercourse occurred at a particular time. So you will have to make an independent finding of those first two issues before you could actually go on to the third one.

. . . .

... If you find that there was no act of sexual intercourse in this particular case, then you would just disregard the test results because it must be proven there was an act of sexual intercourse between this Plaintiff and this Defendant before the test results may be considered by you.

. . . .

I'll repeat again, in order for the probability of paternity indexes or results to be relevant, you must find first that there was sexual intercourse between Miss Olson and Ed Dietz which occurred at a time that conception could have occurred. Your failure to find that sexual intercourse so occurred would render the results of the paternity test irrelevant.

■ We have reviewed the record in this case and conclude that the trial court did not err by refusing these two points for charge, since the substance of these requested points was amply covered by the court's charge to the jury. *See Bohner v. Stine, supra; Fink v. Commonwealth,* 85 Pa.Commw. 290, 482 A.2d 281 (1984).

Appellant asks us to consider, finally, whether the trial court erred in denying his post-verdict motions in the nature of a motion for judgment notwithstanding the verdict, and a new trial. In support of this contention, Appellant relies heavily upon the testimony of Dr. James Hammett concerning his examinations of Appellee Olson, and an ultrasound test which was performed upon her on June 24, 1982.

While, as Appellant alleges, Dr. Hammett did testify that Appellee Olson's uterus had enlarged to the size of a four month pregnancy by the time of his examination on December 16, 1981, he also stated that that calculation was approximate and that she could have become pregnant during September, or in early October, of 1981. N.T., 6/21/84 at 7. *See also* N.T., 6/21/84 at 23.

Appellee Olson, herself, testified that her last normal menstrual period had occurred toward the end of September, 1981. Supp.N.T., 6/21/84 at 11. She also testified that she and Appellant had engaged in sexual intercourse once at the end of September and once at the beginning of October, and that Appellant had reached a climax on both occasions. Supp.N.T., 6/21/84 at 7–8. Appellee Olson stated, furthermore, that she was not seeing anyone else on a

sexual basis during the months of September and October, 1981. Supp.N.T., 6/21/84 at 9.

██ A judgment notwithstanding the verdict may be entered only in a clear case, *Sperrazza v. Cambridge Mutual Fire Insurance Company*, 313 Pa.Super. 60, 459 A.2d 409 (1983), and is proper only where the facts are such that no two reasonable persons could fail to agree that the verdict is improper. *Buck v. Scott Township*, 325 Pa.Super. 148, 472 A.2d 691 (1984). Judgment n.o.v. should not be entered in cases where evidence is conflicting upon a material fact. *Burg v. Aberman*, 183 Pa.Super. 1, 128 A.2d 179 (1957). In considering such a motion, a reviewing court is required to consider the evidence, together with all reasonable inferences therefrom, in the light most favorable to the verdict winner. *Claytor v. Durham*, 273 Pa.Super. 571, 417 A.2d 1196 (1980).

██ Assuming as true, therefore, Appellee Olson's testimony that her last normal menstrual period had occurred toward the end of September 1981, and that she had had sexual intercourse with Appellant in late September and early October 1981, and with no one else during those months, Dr. Hammett's testimony, by itself, was not sufficient to exclude Appellant as the possible father. The evidence respecting a material fact was, indeed, conflicting and it was, thus, proper for the jury to determine, by a preponderance of the evidence, whether Appellant was the father of Scott Olson. Appellant's motion for judgment n.o.v. was properly denied.

We note, also, that the grant of a new trial is within the sound discretion of the trial judge, whose exercise thereof will not be reversed in the absence of a palpable abuse of discretion. *Yandrich v. Radic*, 291 Pa.Super. 75, 435 A.2d 226 (1981). Perceiving no palpable abuse of discretion in the trial court's refusal to grant Appellant a new trial, such motion for new trial was also properly denied.

Order affirmed.