## Smith v. Richardson

*Geoffrey S. Casher, assistant district attorney,* for complainant.

*Audrey E. Woloshin,* for defendant.

KUHN, *J.,* November 4, 1988 — Plaintiff filed a support complaint against defendant alleging he was the father of her daughter, Heather Marie Richardson, born March 31, 1987. The parties were never married. Defendant denied paternity and demanded a blood test.

A red-cell and HLA blood test was performed by the Baltimore Rh Typing Laboratory which reported a relative probability of paternity of 94.28 percent. Plaintiff filed a motion in limine to exclude admissibility of this information as affirmative evidence of paternity.

Although HLA blood test results may be introduced as some evidence of paternity when a proper foundation is laid, they are not conclusive. *Turek v. Hardy,* 312 Pa. Super. 158, 163, 458 A.2d 562, 565 (1983). The Superior Court set several minimal guidelines for the admissibility of HLA test results, 312 Pa. Super. at 164, 458 A.2d at 565, but left for the trial court to develop other guidelines on a case-by-case basis.

Pennsylvania court ruling upon whether a threshold probability of paternity must be achieved before the HLA test results are admissible in a paternity trial. Recently the issue came before us in *Caskey v. Caskey,* DR-502-85 (1988). There the putative father's probability of paternity was 83.10 percent. We ruled that unless the probability of paternity was 90 percent or greater, it would not be admissible as affirmative evidence of paternity and specifically left for another day whether a higher percentage would

be required. We based our opinion upon the decision of the Massachusetts Supreme Court in *Commonwealth v. Beausoleil,* 397 Mass. 206, 490 N.E.2d 788 (1986) and the Joint AMA-ABA Guidelines, 10 Fam. L.Q. 247 (1976).

The introduction of scientific evidence in Pennsylvania is governed by the standard set forth in *Frye v. United States,* 293 F. 1013 (D.C. 1923) which requires that before evidence which is scientifically adduced can be admitted, the principle upon which it is based must be sufficiently established to have gained general acceptance in the scientific community. *Commonwealth v. Nazarovitch,* 496 Pa. 97, 436 A.2d 170 (1981). A court will look to case authority and scientific publications in determining whether that general consensus exists. *Commonwealth v. Topa,* 471 Pa. 223, 369 A.2d 1277 (1977).

Our research has revealed, and *Turek, supra,* has concluded that HLA tests are generally accepted in the scientific community as being reliable in calculating the probability that a putative father is the actual father of a child. Such tests generally "advance the inquiry as to the child's paternity and are therefore of probative value." 312 Pa. Super. at 162, 458 A.2d at 564. However, our research leads us to conclude, based upon the present development of HLA tests, that there is no general consensus that the test results should be admissible as affirmative evidence of paternity unless those results achieve a level of 95 percent or greater.

The Joint Guidelines recommended that if the test results show a "strong likelihood of paternity" those results should be presented to the jury.[1] The phrase "strong likelihood of paternity" only has

1. 10 Fam. L.Q. at 282.

meaning when referring to Table 4 in the guidelines.[2] There, probability of paternity is defined in relation to likelihoods of paternity as follows:

| Probability of Paternity | Likelihood of Paternity |
| --- | --- |
| 99.80–99.90 | Practically proven |
| 99.10–99.75 | Extremely likely |
| 95–99 | Very likely |
| 90–95 | Likely |
| 80–90 | Undecided |
| less than 80 | Not useful |

The lowest percentage of probability of paternity which would suggest a "strong likelihood of paternity" is 95 percent (very likely).

A more recent publication by Robert A. Peterson, *A Few Things You Should Know About Paternity Tests,* 22 Santa Clara L. Rev. 667 (1982), also suggested that 95 percent should be the threshold below which HLA test results should not be admissible as affirmative evidence of paternity. Mr. Peterson opined that there is a disagreement in the scientific community about the level of significance of paternity indices. He pointed to three sources as suggesting that 95 percent is the better threshold. First, he noted that in the Nordic countries a result below 95 percent means that paternity is neither particularly probable nor particularly improbable while paternity is considered rather probable between 95–99 percent. Second, he pointed to the Joint Guidelines. Third, he cited the American Association of Blood Banks, Paternity Testing (1978), for the idea that 95 percent is a commonly accepted level of significance. Peterson wrote:

"The significance of a 'high' probability of paternity is difficult to evaluate. It is clear that nonexcluded non-fathers can score comparatively high

---

2. 10 Fam. L.Q. at 262.

probabilities of paternity (since most non-fathers are excluded, the rest must of necessity 'fit' reasonably well). In one study, as many non-excluded non-fathers scored over 88 percent as scored under 88 percent. On the average, fathers have higher probabilities of paternity than non-excluded non-fathers (in the same study, the mean for fathers was 98.04 percent, so a paternity index must be rather high before it really differentiates the non-excluded non-fathers from the (obviously non-excluded) fathers. *There is no general agreement in the scientific community that a probability below 95 percent (Paternity Index 19) is significant, so significance should be attached only to those probabilities exceeding 95 percent.*" 22 Santa Clara L. Rev. at 707-8. (emphasis supplied)

The Maryland legislature has required that a probability of paternity must be at least 97.3 percent before it can be admitted as evidence in a paternity case. Md. Fam. Law Code Ann. §5-1029 (1984). Although we are not prepared to go that far at present, the statute does give significance to results closer to 95 percent than, for example, 90 percent.

The court in *Commonwealth v. Beausoleil, supra,* looked to the Joint Guidelines and the Peterson article to support its conclusion that inculpatory blood test evidence is admissible only if the probability of the putative father's paternity is 95 percent or greater.

The only other case authority we have located is *Koffard v. Flora,* 744 P.2d 1343 (Utah 1987). There, while acknowledging that the basic principles upon which HLA tests for determining paternity are now generally accepted in the scientific community, the court nevertheless concluded that admissibility would only be permitted if those results were 95 percent or greater.

We have found no information which disputes the aforementioned sources. At this time, we accept those premises and conclusions.

Accordingly, we enter the attached

## ORDER

And now, November 4, 1988 defendant's motion in limine is granted. The complainant is precluded from admitting at trial the results of an HLA test as affirmative evidence of paternity when the test has yielded a probability of paternity of less than 95 percent.