595 A.2d 70

Larry CASHDOLLAR, Appellant,

v.

The MERCY HOSPITAL OF PITTSBURGH.

Larry CASHDOLLAR

v.

The MERCY HOSPITAL OF PITTSBURGH, Appellant.

Superior Court of Pennsylvania.

Argued March 21, 1991.

Filed June 24, 1991.

Reargument Denied Sept. 3, 1991.

608

John O'Donnell and David F. Weiner, Pittsburgh, for appellant (at 1224) and appellee (at 1281).

Eric P. Reif, Pittsburgh, for appellant (at 1281) and appellee (at 1224).

Before ROWLEY, President Judge, and WIEAND and HOFFMAN, JJ.

HOFFMAN, Judge:

These cross-appeals are from the judgment entered following a jury verdict in favor of Larry Cashdollar in a breach of contract of employment action that he brought against The Mercy Hospital of Pittsburgh. In appeal number 1224 PGH 90, Cashdollar contends that the trial court erred in (1) granting Mercy Hospital's Motion for a Remittitur; and (2) granting compulsory nonsuits on his misrepresentation and defamation claims. In appeal number 1281 PGH 90, Mercy Hospital contends that the trial court erred in: (1) refusing to grant judgment notwithstanding the verdict; (2) refusing several of Mercy's requested points for charge; and (3) granting an insufficient remittitur. For the reasons that follow, we find no merit in either party's claims; thus, we affirm the judgment below.

In September of 1986, Larry Cashdollar accepted an offer of employment as Vice President of Human Resources at The Mercy Hospital of Pittsburgh ("Mercy"). As a result of this offer, Cashdollar resigned from his position as Vice President of Human Resources at Fairfax Hospital Association in Virginia, sold his home, and moved with his family to Pittsburgh. Cashdollar began working at Mercy on October 27, 1986. On November 19, 1986, after sixteen working days, Cashdollar was abruptly fired for allegedly creating an unstable working environment in the Human Resources Department.

On November 6, 1987, Cashdollar filed this action to recover damages for breach of an implied contract of employment, promissory estoppel, defamation, fraudulent misrepresentation and negligent misrepresentation. The case was tried before a jury from November 29 to December 5, 1989. At the close of his case, the trial court nonsuited Cashdollar on the counts of defamation, fraudulent misrepresentation and negligent misrepresentation. At the close of evidence, the jury awarded Cashdollar the sum of $407,-000.00.[1] Motions for post-trial relief were timely filed by

---

1. Specifically, the jury awarded Cashdollar $88,000.00 which represented damages for the three year period from the date Cashdollar

both parties. On July 31, 1990, the trial court denied Mercy's request for judgment notwithstanding the verdict and a new trial. The trial court also denied Cashdollar's challenges to the nonsuits on the counts of defamation and misrepresentation. The court did, however, remit the award to $204,000.00. These timely cross-appeals followed.

## I. MERCY'S CLAIMS FOR J.N.O.V. AND NEW TRIAL

### A. *Judgment n.o.v.*

Mercy first contends that the trial court erred in refusing to grant its motion for judgment notwithstanding the verdict. Specifically, Mercy argues that Cashdollar presented insufficient evidence to rebut the presumption of at-will employment.

■ It is well-settled that a judgment notwithstanding the verdict may be entered only in a clear case, where after viewing the evidence in the light most favorable to the verdict winner, no two reasonable minds could fail to agree that the verdict was improper. *See Scullion v. EMECO Indus.*, 398 Pa.Super. 294, 297, 580 A.2d 1356, 1358 (1990) (citation omitted); *Robertson v. Atlantic Richfield Petro.*, 371 Pa.Super. 49, 58, 537 A.2d 814, 819 (1987), *allocatur denied*, 520 Pa. 590, 551 A.2d 216 (1988) (citation omitted).

■ In Pennsylvania, an employment relationship is generally considered to be "at-will," and, absent a contract, may be terminated by either party at any time, for any reason or for no reason. *See, e.g., Clay v. Advanced Computer Applications*, 370 Pa.Super. 497, 510, 536 A.2d 1375, 1382 (1988); *Marsh v. Boyle*, 366 Pa.Super. 1, 4, 530 A.2d 491, 493 (1987); *Veno v. Meredith*, 357 Pa.Super. 85, 95, 515 A.2d 571, 576 (1986); *Darlington v. General Elec.*, 350 Pa.Super. 183, 188, 504 A.2d 306, 309 (1986). However, an employee can defeat the "at-will" presumption by estab-

was fired to the date of the verdict. In addition, the jury awarded Cashdollar $29,000.00 per year for eleven years from the date of the verdict. The $29,000.00 figure represented the approximate difference between Cashdollar's salary at Mercy and the salary he was receiving from his new job at the time of trial.

lishing, *inter alia*, that the employee gave his employer additional consideration other than the services for which he was hired. *See Scullion v. EMECO Indus., supra*, 398 Pa.Superior Ct. at 297, 580 A.2d at 1358; *Marsh v. Boyle, supra* 366 Pa.Super. at 5, 530 A.2d at 493; *Veno v. Meredith, supra* 357 Pa.Super. at 96–97, 515 A.2d at 580; *Darlington v. General Elec., supra* 350 Pa.Super. at 199, 504 A.2d at 314; *Lucacher v. Kerson*, 158 Pa.Super. 437, 441, 45 A.2d 245, 248 (1946), *aff'd*, 355 Pa. 79, 48 A.2d 857 (1946). As this Court stated in *Darlington v. General Elec., supra*, "a court will find 'additional consideration' when an employee affords his employer a substantial benefit other than the services which the employee is hired to perform, or when the employee undergoes a substantial hardship other than the services which he is hired to perform." *Id.* 350 Pa.Super. at 201, 504 A.2d at 315. It is a question of fact whether, in a given case, the additional consideration furnished by the employee is sufficient to rebut the at-will presumption. *Scullion v. EMECO Indus., supra*, 398 Pa.Superior Ct. at 297, 580 A.2d at 1358.

 The facts, viewed in the light most favorable to Cashdollar as the verdict winner, are as follows. Cashdollar, at the age of forty-seven, accepted a position as Vice President of Human Resources at Mercy, where he was to earn approximately $91,000.00 per year. *See* N.T. November 29, 1989 at 65, 67. Before he was hired by Mercy, Cashdollar was Vice President of Human Resources for the Fairfax Hospital Association in Fairfax, Virginia where he was earning $82,000.00 per year. *Id.* at 66. Cashdollar had been employed by Fairfax for four and one-half years. *Id.* at 39. In the summer of 1986, Cashdollar interviewed for the position at Mercy after he was approached by an executive search firm that was retained by Mercy. *Id.* at 40. Subsequently, Mercy invited Cashdollar to Pittsburgh where he was interviewed by several Mercy executives including Kenneth Buser, the Executive Vice President. *Id.* at 42–43. Cashdollar testified that, during the interview, Buser spoke to him about a future role that he would have with Mercy and with the Eastern Mercy Health Alliance if

he were hired. *Id.* at 44. Cashdollar testified further that Mercy showed particular interest in him because of his background in multi-hospital administration which would be relevant to his prospective work with the Eastern Mercy Health Alliance. *Id.* at 46–47. Initially, Cashdollar was not selected for the position. However, after Mercy's first choice for the position had rejected its offer, Cashdollar was asked if he was interested in being further considered for the job. Cashdollar replied that he was not interested because his wife was pregnant at the time, and he did not want to relocate. Cashdollar then received a phone call from Kenneth Buser in which Buser implored him to reconsider the Mercy job and asked him to come to Pittsburgh at the hospital's expense to become acquainted with the city. *Id.* at 60–63. After much persistence on Buser's part, Cashdollar accepted Mercy's offer. N.T. November 30, 1989 at 76. Cashdollar testified that he accepted the offer because it was an excellent career opportunity and because he would be earning a greater salary. N.T. November 29, 1989 at 66. Cashdollar then resigned from his position at Fairfax Hospital, sold his house in Virginia and moved his pregnant wife and two-year-old child to Pittsburgh. N.T. November 30, 1989 at 76–81.

This Court has found insufficient additional consideration where an employee has suffered detriments, in the course of his or her employment, that are "commensurate with those incurred by all manner of salaried professionals." *See Veno v. Meredith, supra.* However, in the instant case, there was sufficient evidence that, in taking the job with Mercy, Cashdollar suffered greater hardship than those hardships "incurred by all manner of salaried professionals." Cashdollar gave up his secure employment with Fairfax Hospital Association where he had worked for over four years at a salary of $82,000.00 per year. In addition, Cashdollar uprooted his pregnant wife and two-year-old child and sold his home based on his understanding that he was going to a job where his special talents would be employed as Vice President of Human Resources at Mercy

and also as a participant in the Eastern Mercy Health Alliance. In light of these special circumstances that attended Cashdollar's job change, we conclude that these hardships constitute sufficient additional consideration to rebut the at-will presumption. *See Darlington v. General Elec., supra,* 350 Pa.Superior Ct. at 201, 504 A.2d at 315 (additional consideration regarded as sufficient when new employee must undergo substantial hardship such as moving family to take new position); *see also Scullion v. EMECO Indus., supra,* 398 Pa.Superior Ct. at 297, 580 A.2d at 1358; *Lucacher v. Kerson, supra* 158 Pa.Super. at 441, 45 A.2d at 248.[2] Thus, we cannot say that the trial court erred in holding that the jury could properly find, based on this evidence, that an implied contract for employment existed between Cashdollar and Mercy. Therefore, the trial court did not err in refusing to grant Mercy's motion for judgment notwithstanding the verdict.

### B. *New Trial*

Mercy next contends that the trial court erred in refusing to grant a new trial where the court below refused several of Mercy's requested points for charge. Specifically, Mercy contends that the lower court erred in refusing to instruct the jury on the degree of specificity necessary to establish an implied contract of employment. Our standard of review of the denial of a new trial is well-settled. We will reverse the trial court only where we find a clear abuse of discretion or an error of law which controlled the outcome of the case. *See, e.g., Robertson v. Atlantic Richfield Petro., supra* 371 Pa.Super. at 61, 537 A.2d at 820 (citing *Wood v. Smith,* 343 Pa.Super. 547, 550, 495 A.2d 601, 603 (1985)). In evaluating a claim of erroneous jury instructions, we must analyze the court's instruction in its entirety. *See Olson v. Dietz,* 347 Pa.Super. 1, 6, 500 A.2d 125, 127 (1985). If a requested point for charge is already sufficiently covered in the trial court's instructions to the

**2.** In addition, we should note that the unusually persistent efforts of Mr. Buser and his suggestion that Mr. Cashdollar was particularly well-suited for the position, tend to suggest a "substantial benefit" to Mercy. *See Darlington v. General Elec., supra* 350 Pa.Super. at 201, 504 A.2d at 315.

jury, it is proper to deny the specific request. *Id.*, 347 Pa.Superior Ct. at 6, 500 A.2d at 127–28. After review of the charge, we conclude that the instructions given to the jury were proper.

■ Mercy contends that the lower court erred in refusing its requested jury instructions 8, 12, 13, and 14 which state the requirement in Pennsylvania that, in order to establish an implied contract of employment, plaintiff must prove the existence of a very clear statement of an intention by both parties to alter the at-will relationship. In its charge to the jury, the trial court explained that, under Pennsylvania law, employment relationships are presumptively at-will and the plaintiff bears the burden of proving an agreement by the parties to enter into a contractual relationship. Specifically, the court charged the jury, in relevant part, as follows:

> Now—and this is, of course, important—in order for you to find in favor of the Plaintiff on the formation of a contract for some period—some reasonable period of time, it is necessary for you to find that Mr. Buser had this actually in his mind, not merely that Mr. Cashdollar thought he had it in his mind, not what Mr. Cashdollar thought that Mr. Buser had in his mind, but this actually was in Mr. Buser's mind you see. You would have to find that.

N.T. December 5, 1989 at 157. We are convinced that the trial court adequately summarized the law regarding implied contract of employment cases in its charge to the jury. *See Robertson v. Atlantic Richfield Petro., supra* 371 Pa.Super. at 64–65, 537 A.2d at 822; *Veno v. Meredith, supra* 357 Pa.Super. at 99, 515 A.2d at 578; *Darlington v. General Elec., supra* 350 Pa.Super. at 193, 504 A.2d at 311. Because the jury charge adequately summarized the pertinent law on this point, the trial court did not err in refusing Mercy's proposed instructions. *See Olson v. Dietz, supra.*

## II. CASHDOLLAR'S CLAIMS REGARDING NONSUITS

■ In his appeal, Cashdollar contends that the trial court erred in granting compulsory nonsuits on his def-

amation and misrepresentation claims. "In a case involving only one defendant, at the close of plaintiff's case on liability and before any evidence on behalf of the defendant has been introduced, the court, on the oral motion of a party, may enter a nonsuit if the plaintiff has failed to establish a right to relief." Pa.R.Civ.P. 230.1. A compulsory nonsuit can be granted only in a case where it is clear that a cause of action has not been established, and the plaintiff must be given the benefit of all favorable evidence and all reasonable inferences of fact arising from that evidence, resolving any conflict in the evidence in favor of the plaintiff. *Storm v. Golden*, 371 Pa.Super. 368, 373, 538 A.2d 61, 63 (1988) (citations omitted). With these standards in mind, we will consider the claims that were nonsuited.

## A. *Defamation*

Cashdollar argues that the letter of termination written by Kenneth Buser was defamatory as a matter of law. Specifically, Cashdollar claims the following statement defamed him:

> The purpose of this action [Cashdollar's termination] is as a result of a lack of trust in our relationship and your performance to date which has created an unstable working environment in Human Resources.

*See* Termination Letter, November 19, 1986, R.R. at 21a. The trial court found that this letter was not defamatory on its face. *See* N.T. December 1, 1989 at 250, 332.

In a defamation claim, the plaintiff has the burden of proving, *inter alia*, that a communication is defamatory. *See* 42 Pa.C.S.A. § 8343(a). Whether a communication can be construed to have a defamatory meaning is a question of law for the court to determine. *See Baker v. Lafayette College*, 516 Pa. 291, 296, 532 A.2d 399, 402 (1987) (evaluation report not defamatory); *Sobel v. Wingard*, 366 Pa.Super. 482, 486–87, 531 A.2d 520, 522 (1987) (termination letter not defamatory); *Veno v. Meredith, supra* 357 Pa.Super. at 92, 515 A.2d at 575 (newspaper editorials not defamatory). In making this determination, the

court must view the statements in context and determine whether the statement was maliciously written or published and tended "to blacken a person's reputation or to expose him to public hatred, contempt, or ridicule, or to injure him in his business or profession." *Baker v. Lafayette College, supra.*

■ Applying these established legal principles to the present case, it is clear that the trial court did not err in nonsuiting the defamation claim. Cashdollar argues that the termination letter is actionable because it indicated that he was "untrustworthy, an inadequate performer, and [it] cast[ ] aspersions on his stability." *See* Brief for Appellant Cashdollar at 22. We do not agree with this characterization of the letter. The letter does not attribute a lack of ability which would tend to harm Cashdollar in his profession. *See Sobel v. Wingard, supra.* It comments only on Mercy's evaluation of Cashdollar's performance in the context of his employment at that institution and states the reasons for his dismissal. Therefore, we find that the letter was not defamatory on its face. Accordingly, the trial court did not err by granting a compulsory nonsuit on the defamation count.

## B. *Misrepresentation*

■ Cashdollar also argues that the trial court erred in granting a compulsory nonsuit on his fraudulent misrepresentation claim.[3] Specifically, Cashdollar argues that Mercy fraudulently induced him into accepting employment to his detriment.

Our courts have consistently held that a false representation is fraudulent only when it is established by clear and convincing evidence that the representation was made knowingly with the intent to deceive or in reckless disregard for the truth or falsity of the matter. *Adams v. Euliano,* 299 Pa.Super. 348, 350, 445 A.2d 788, 790 (1982)

---

3. The trial court also granted a compulsory nonsuit on the count of negligent misrepresentation. However, on appeal, Cashdollar makes no argument as to the propriety of the court's ruling on this count.

(citations omitted). Our review of the record in the instant case reveals no evidence of the requisite scienter necessary to prove fraudulent misrepresentation on the part of Mercy. Therefore, we cannot say that the trial court erred in granting a nonsuit on the count of fraudulent misrepresentation.

## III. REMITTITUR

Both Cashdollar and Mercy challenge the trial court's order of remittitur. Cashdollar claims that the trial court erred in granting Mercy's Motion for a Remittitur in the amount of $203,000.00. Mercy, on the other hand, claims that the trial court erred by not granting their request for remittitur in an amount commensurate with an employment contract for, at most, six to twelve months.

It is established that remittitur is proper only to reduce the amount of a verdict considered excessive by the court. *See, e.g., Atene v. Lawrence,* 456 Pa. 541, 318 A.2d 695 (1974); *Lininger v. Kromer,* 238 Pa.Super. 259, 358 A.2d 89 (1976); *see also Senor v. Rostraver Twp. Airport Auth.,* 3 Pa.Commw. 89, 91, 280 A.2d 829, 830 (1971). A remittitur should fix the highest amount any jury could properly award, giving due weight to all the evidence offered. *See Senor v. Rostraver Twp. Auth., supra.* Here, the trial court explained its reasons for remitting the award as follows:

Assuming that we have sufficient evidence for a contract of some length, there remains the troublesome question of how long would it be intended to last. The defense contends that the absence of any specific reference to time in itself makes it legally impermissible to infer any contract and of course it will be conceded that an employment contract without a time frame would be a mirage. However, we are not persuaded that it is impossible to determine a time frame from circumstantial evidence. We agree with the defense that there is no evidence, even circumstantial, which can be construed to mean that

Buser promised employment for fourteen (14) years. That is not to say that Cashdollar did not expect to be with Mercy for fourteen years and he probably did and well could have been, but an expectation of the prospective employee, however reasonable from his point of view, does not supply a meeting of the minds. As we see it, the conduct of Buser can, however, be interpreted to intend employment at least long enough to accomplish the objectives. How long would this be? Perhaps five (5) years would be more than enough, but mindful of the principle that we should not detract from a jury verdict any more than absolutely necessary, we shall say approximately seven (7) years and order a remittitur of Two Hundred and Three Thousand Dollars ($203,000), thereby reducing the verdict to Two Hundred and Four Thousand Dollars ($204,000).

Trial Court Opinion, filed July 31, 1990, at 6.

 The trial court premised its order of remittitur upon the nature of an implied contract of employment action. As we have noted above, when sufficient additional consideration is present, an employee should not be subject to discharge without just cause *for a reasonable time. See Marsh v. Boyle, supra* 366 Pa.Super. at 6, 530 A.2d at 494; *Veno v. Meredith, supra* 357 Pa.Super. at 102, 515 A.2d at 580; *Darlington v. General Elec., supra* 350 Pa.Super. at 199–200, 504 A.2d at 314. When the exact period for which the parties intended to contract cannot be ascertained, the agreement is not vitiated; rather, an agreement for a "reasonable time" will be inferred. *Marsh v. Boyle, supra; Veno v. Meredith, supra.* "The length of time during which it would be unreasonable to terminate, without just cause, an employee who has given additional consideration should be commensurate with the hardship the employee has endured or the benefit he has bestowed." *Veno v. Meredith, supra* 357 Pa.Super. at 102, 515 A.2d at 580.

 Here, the trial court found that the jury erred in concluding that the parties intended the employment con-

tract to last for fourteen years [4] and, accordingly, halved the length of the contract and reduced the jury verdict from $407,000.00 to $204,000.00. In light of the above-cited principles of law, the trial court's action in reducing the verdict was proper under the law relating to implied contracts. *See, e.g., Paul v. Lankenau Hosp.*, 375 Pa.Super. 1, 22, 543 A.2d 1148, 1159 (1988), *rev'd on other grounds*, 524 Pa. 90, 569 A.2d 346 (1990) (upholding trial court's order of remittitur of excessive jury award); *see also Veno v. Meredith, supra* 357 Pa.Super. at 102 n. 4, 515 A.2d at 580 n. 4 ("reasonable length of time" of implied contract of employment had passed where appellant employed for eight years before he was dismissed). Because the remittitur necessarily resulted from the trial court's application of contract law, it was not error for the trial court to fix the award as it did.

For the above-stated reasons, we affirm the judgment below.

Judgment affirmed.

---

**4.** Apparently, the jury fixed the length of the implied contract at Cashdollar's retirement (65 years old), as appellant was 51 years old at the time of trial.