**Gavin v. Saltzman**

14

*Richard Orloski,* for plaintiff.
*Daylin Leach,* for defendants.

MORAN, *J.,* December 15, 1993—This action is before the court on the preliminary objections of defendant Saltzman and the preliminary objections of defendant *The Morning Call.*

On December 24, 1992, *The Call* published an article on the first page of its a.m. magazine section about child custody battles during Christmastime. One specific incident was related involving an unnamed father who purportedly refused to give up custody on New Year's Eve 1992, his ex-wife's wedding day, unless his ex-wife, also unnamed, gave up her custody rights on Christmas day.

Defendant Saltzman, an attorney who was identified in the article as the attorney for the mother, made the following statement to defendant *Call:*

"He didn't want her to have them [the children] at all. It was like, I have something you want, so you're going to lose Christmas." *The Morning Call,* December 24, 1992.

The remainder of the article addressing this incident was as follows:

"The mother was beside herself. According to her custody agreement, her ex-husband was supposed to have their children on New Year's Eve.

"But with her wedding planned for Dec. 31, she wanted the children with her for the occasion. When the mother asked her ex-husband to give her the children for the day, he agreed—on one condition. She had to give up all rights to spend Christmas with them.

[Attorney Saltzman quote cited above]

"So went this year's first Christmas custody battle in Lehigh County Court, one that eventually saw President Judge James N. Diefenderfer ruling in favor of the mother, giving her both New Year's Eve and Christmas visits with her children." *The Morning Call,* December 24, 1992.

Plaintiff avers that Saltzman's communications to *The Call's* reporter were false, defamatory, and placed plaintiff in a false light in the community. Plaintiff further avers that *The Call,* without checking the validity of Saltzman's statement, published false allegations, either knowingly or with reckless disregard for the truth.

Plaintiff alleges that the above quoted portions of *The Call's* article demonstratively refer to him because he "was the only person in the Lehigh Valley involved in custody/visitation litigation in the Fall/Winter of 1992 whose ex-wife was getting married on December 31st, and represented by Jon M. Saltzman." Defendants have not denied that plaintiff is the father portrayed in *The Call's* article.

As a result of defendants' actions, plaintiff alleges that he was held up to public ridicule and humiliation, resulting in pain, suffering and great emotional distress for which plaintiff claims damages.

Defendant Saltzman objects to the complaint for the following reasons: the complaint fails to state a cause of action because Saltzman's statements were not defamatory, fails to plead that the statement applies to plaintiff, fails to plead that the recipients understood a defamatory meaning from the statement, fails to plead that the recipients understood that the statement applied to plaintiff, fails to properly plead damages; no punitive damages are available because plaintiff failed to plead actual malice; the complaint lacks specificity; and para-

graphs 7, 8, 14, 15, 16 and 18 of the complaint are scandalous and impertinent.

Defendant *The Call* objects to the complaint for the following reasons: the publication complained of is not capable of a defamatory meaning; the publication is a fair and accurate summary of a judicial proceeding and record; and the publication is not capable of reasonably being understood as applying to plaintiff.

In reviewing preliminary objections in the nature of a demurrer, we accept as true all material facts alleged in the complaint as well as inferences reasonably deducible therefrom. *Gentile v. West American Insurance Exchange,* 367 Pa. Super. 99, 532 A.2d 472 (1987). In determining whether the factual averments of a complaint are sufficient to state a cause of action, all doubts must be resolved in favor of the sufficiency of the complaint. *Ervin v. American Guardian Life Assurance Co.,* 376 Pa. Super. 132, 545 A.2d 354 (1988). "A demurrer will be sustained only where the complaint demonstrates with certainty that under the facts averred within, the law will not permit a recovery." *Id.* at 133, 545 A.2d at 355. "If any theory of law will support the claim raised by the complaint, dismissal is improper." *Id.* at 133, 545 A.2d at 355.

Plaintiff's burden in establishing defamation is set forth in 42 Pa.C.S. §8343(a):

"(1) The defamatory character of the communication.

"(2) Its publication by the defendant.

"(3) Its application to the plaintiff.

"(4) The understanding by the recipient of its defamatory meaning.

"(5) The understanding by the recipient of it as intended to be applied to the plaintiff.

"(6) Special harm resulting to the plaintiff from its publication.

"(7) Abuse of a conditionally privileged occasion." 42 Pa.C.S. §8343(a).

In a defamation claim, the plaintiff must first prove that the communication was defamatory. See 42 Pa.C.S. §8343(a). "Whether a communication can be construed to have a defamatory meaning is a question of law...." *Cashdollar v. Mercy Hospital of Pittsburgh,* 406 Pa. Super. 606, 616, 595 A.2d 70, 75 (1991) (citations omitted). In making this determination, the court must view the statements in context and determine whether the statement was maliciously published and tended "to blacken a person's reputation or to expose him to public hatred, contempt, or ridicule, or to injure him in his business or profession." *Id.* at 617, 595 A.2d at 75, citing *Baker v. Lafayette College,* 516 Pa. 291, 296, 532 A.2d 399, 402 (1987). "If the court determines that the challenged publication is not capable of a defamatory meaning, there is no basis for the matter to proceed to trial." *Thomas Merton Center v. Rockwell International Corp.,* 497 Pa. 460, 464-465, 442 A.2d 213, 215-216 (1981).

Defendant Saltzman's comments, as reported in *The Call,* are not defamatory in nature. His statement, "He didn't want her to have them [the children] at all," was plainly his personal interpretation of what was happening between his client and her ex-husband. His other statement, "It was like, I have something you want, so you're going to lose Christmas," is also defendant Saltzman's personal view of the situation. The phrase "it was like" expresses Saltzman's observations of the stance that the father was taking in the custody dispute. The phrase also indicates that Saltzman was not directly

quoting the father but merely paraphrasing, into one sentence, the father's position.

Saltzman's statements and *The Call's* account of the dispute portray the father as a difficult individual. Branding someone a difficult person does not rise to the level of defamation and would not "blacken a person's reputation or to expose him to public hatred, contempt, or ridicule, or to injure him in his business or profession." *Baker, supra* at 296, 532 A.2d at 402. At the very worst, the article and Saltzman's comment were annoying and embarrassing for plaintiff; our courts have held that this is not defamation. See *Neish v. Beaver Newspapers, Inc.,* 398 Pa. Super. 588, 581 A.2d 619 (1990).

Neither plaintiff nor his ex-wife were identified in the article. The overall point of the article was to call attention to the commonality of custody disputes at Christmastime. In addition to the incident related above, the article in question also stated:

"In the weeks before Christmas, child-custody experts say, parents *often* end up in court fighting over who gets the children for the holiday. *Lehigh County even sets aside hearing dates to handle last-minute visitation squabbles." The Morning Call,* December 24, 1992. (emphasis added)

According to the article, Christmas custody battles are quite common. This information would also tend to indicate that public opinion would *not* find that the plaintiff-father, criticized by Saltzman and portrayed negatively by *The Call,* is a person deserving of some special reproach from the community.

We find that the statement and article complained of are not capable of defamatory meaning; therefore, we do not reach a conclusion on the other objections made on this cause of action by defendants.

Likewise, we note that an action for invasion of the right to privacy by publicly placing a person in a false light[1] requires that the publication be "highly offensive to a reasonable person." See *Neish, supra* at 598, 581 A.2d at 624. Because the article states that custody battles during Christmas are a common occurrence, the actions of the father as described by Saltzman's comment and *The Call's* article could not reasonably be construed as highly offensive.

Because plaintiff has failed to state a cause of action for defamation or invasion of privacy against either defendants, the preliminary objections of defendants are sustained and plaintiff's complaint is dismissed.

### ORDER OF COURT

And now, December 15, 1993, the preliminary objections of defendants Jon M. Saltzman ("Saltzman") and *The Morning Call, Inc. ("The Call")* are hereby sustained and plaintiff's complaint is dismissed.

---

1. While the complaint does not plainly state a claim for invasion of privacy: false light, we address this issue because paragraph 19 avers that Saltzman's communications to *The Call* "placed the plaintiff in a false light in the community."