J-S09028-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| RAJA RAJAN | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| ALASTAIR CRAWFORD, SHADRON | : | No. 1169 EDA 2023 |
| STASTNEY, ASAF GOLA AND KEVIN | : | |
| GOLLOP | : | |

Appeal from the Order Entered April 20, 2023
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s): 210200269

| | | |
|---|---|---|
| RAJA RAJAN | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| ALASTAIR CRAWFORD, SHADRON | : | |
| STASTNEY, ASAF GOLA AND KEVIN | : | |
| GOLLOP | : | No. 1300 EDA 2023 |
| | : | |
| | : | |
| | : | |
| APPEAL OF: ALASTAIR CRAWFORD | : | |

Appeal from the Order Entered April 20, 2023
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s): 210200269

| | | |
|---|---|---|
| RAJA RAJAN | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| ALASTAIR CRAWFORD, SHADRON | : | |
| STASTNEY, ASAF GOLA AND KEVIN | : | |
| GOLLOP | : | No. 1315 EDA 2023 |
| | : | |

J-S09028-24

:
APPEAL OF: SHADRON STASTNEY          :

Appeal from the Order Entered April 20, 2023
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s):  210200269

BEFORE:  PANELLA, P.J.E., NICHOLS, J., and BECK, J.

MEMORANDUM BY NICHOLS, J.:                    **FILED JULY 18, 2024**

In these cross-appeals,[1] Raja Rajan,[2] and Alastair Crawford and Shadron Stastney appeal from the order sustaining preliminary objections filed by Crawford, Stastney, Asaf Gola, and Kevin Gollop (collectively, Defendants). In the appeal at Docket No. 1169 EDA 2023, Rajan argues that the trial court erred when it sustained Defendants' preliminary objections and dismissed his third amended complaint. In the cross-appeal at Docket Nos. 1300 EDA 2023 and 1315 EDA 2023, Crawford and Stastney contend that even though the trial court sustained their preliminary objections and dismissed Rajan's third

---

[1] This Court *sua sponte* consolidated these appeals. **See** Order, 8/2/23. This Court designated Rajan's appeal at Docket No. 1169 EDA 2023 as the lead appeal, and designated Rajan as Appellant/Cross-Appellee; Crawford and Stastney were designated Appellees/Cross-Appellants, and Gola and Gollop were listed as participants, but were ordered to respond to Rajan's appellate brief as if appellees to Rajan's original appeal. **Id.** Crawford and Stastney filed a joint appellate brief with this Court, while Gola and Gollop each filed individual appellate briefs. **See** Pa.R.A.P. 2137. In his appellate brief, Gollop addressed personal jurisdiction issues, while adopting by reference the arguments set forth in Crawford and Stastney's joint appellate brief pursuant to Pa.R.A.P. 2137. **See** Gollop's Brief at 19. Gola's appellate brief solely addressed personal jurisdiction and service issues. **See generally** Gola's Brief at 3-11.

[2] Rajan appeals *pro se*; however, we note that Rajan is a licensed attorney in the Commonwealth of Pennsylvania.

- 2 -

amended complaint, the trial court erred when it concluded that Rajan was not collaterally estopped from filing the instant complaint. After careful review, we affirm.

The trial court set forth the factual and procedural history of this matter as follows:

> This matter arises from the ongoing dispute over control of StreamTV, Inc. (Stream), and its assets. Stream was founded by Plaintiff Raja Rajan and his brother, Mathu Rajan, to create and distribute technology that allowed viewers to watch television in 3D without glasses. The brothers were the majority shareholders and directors, as well as the chief operating officer (COO) and president of Stream.
>
> Defendants are all investors in, creditors of, or directors of Stream. Defendant Alastair Crawford was an equity investor in Stream. Defendant Shadron Stastney is the principal of SLS Holdings VI, LLC, Stream's senior secured creditor. He was formerly Stream's chief financial officer (CFO) and vice chair of the board of directors.
>
> In 2019, Stream began facing significant financial difficulties, and various of the investors in the company began discussing ways to restructure. After negotiations broke down, on January 3, 2020, several investors filed suit in the Delaware Chancery Court against the Rajan brothers (the "investor lawsuit").
>
> Stream defaulted on its loan payments to SLS on or about February 1, 2020. On March 23, 2020, SLS filed a breach of contract and replevin action in the Superior Court of Delaware.
>
> Stream's financial difficulties continued, missing payroll in January 2020. After that point, Stream's investors and secured creditors renewed discussions with the Rajans about restructuring Stream. Pursuant to the negotiations, four outside directors, including Defendants Asaf Gola and Kevin Gollop, were added to the Stream Board of Directors on March 12, 2020.
>
> On May 4, 2020, the Stream Board voted to form a resolution committee to resolve all litigation, debt defaults, or threats

thereof. The committee was given the power to do so without action required from the board or executives of Stream.

On May 6, 2020, the resolution committee approved the omnibus agreement, which was signed by Stream, SLS, Hawk Investment Holdings Limited (Stream's junior secured creditor), and the equity investors. Under the agreement, Stream's assets would be transferred to a new entity, SeeCubic, Inc., which would be controlled by SLS and Hawk.

**Delaware Litigation**

On September 8, 2020, Stream filed suit in Delaware Chancery Court seeking an injunction to stop the implementation of the omnibus agreement. After discovery, the Vice Chancellor found that the omnibus agreement was valid and binding and issued a preliminary injunction to prevent Stream or others from acting to interfere with it.[3] The preliminary injunction was converted to a permanent injunction on September 23, 2021.

On June 15, 2022, the Delaware Supreme Court issued an opinion vacating the permanent injunction, reversing the Chancery Court in part, and remanding the matter for further proceedings.[4] It held that Stream's charter required a vote of the Class B stockholders before an asset transfer such as the one in the omnibus agreement.

**Pennsylvania Litigation**

On May 27, 2020, the Rajan brothers filed suit in [the Court of Common Pleas of Philadelphia County (trial court)] against Defendant Crawford. On February 3, 2021, Plaintiff filed the instant action, also against Defendant Crawford alone. Defendant Crawford removed both actions to the [United States District Court for the] Eastern District of Pennsylvania. There, Plaintiff filed an amended complaint on April 6, 2021, naming Defendants Gola, Gollop, and Stastney as additional defendants (Mathu Rajan did the same in the parallel case). That court found that the additional

_____

[3] ***Stream TV Networks, Inc. v. SeeCubic, Inc.*** 2020-0766-JTL, 2021 WL 5816820 (Del. Ch. filed Dec. 8, 2021) (unpublished opinion).

[4] ***Stream TV Networks, Inc. v. SeeCubic, Inc.***, 279 A.3d 323 (Del. 2022).

defendants destroyed diversity jurisdiction in Plaintiff's case, and remanded it to [the trial court] on February 2, 2022.

Mathu Rajan's actions continued in the Eastern District. On February 16, 2022, [the Eastern District] dismissed his claims, holding in part that he was collaterally estopped by the ruling of the Delaware Chancery Court from arguing that the omnibus agreement was invalid.[5] On November 3, 2022, the [United States Court of Appeals for the Third Circuit] reversed.[6] It held that because the Delaware Supreme Court reversed the Chancery Court's ruling, there was no longer a valid and final judgment upon which collateral estoppel could rely.

Trial Ct. Op., 4/20/23, at 1-3 (unpaginated) (some footnotes omitted and some formatting altered).

In the instant case, Rajan filed a third amended complaint, raising causes of action against all defendants sounding in civil conspiracy, tortious interference, defamation, and a cause of action solely against Crawford in abuse of process. On September 20, 2022, Crawford filed preliminary objections, arguing that Rajan failed to raise legally sufficient claims and that he was collaterally estopped and enjoined from pursuing the claims raised in his third amended complaint. Crawford's Preliminary Objections, 9/20/22, at 2-3. That same day, Stastney filed preliminary objections, alleging that Rajan's claims against Stastney fall outside of the applicable statute of limitations, that Rajan is collaterally estopped from raising his claims, and that Rajan has "failed to plausibly and adequately substantiate the substantive

_____

[5] ***Rajan v. Crawford, et al.***, CV 21-1456, 2022 WL 474454 (E.D. Pa. filed Feb. 16, 2022) (unpublished memorandum opinion).

[6] ***Rajan v. Crawford, et al.***, 22-1719, 2022 WL 16646690 (3d Cir. filed Nov. 3, 2022) (*per curiam*) (unpublished opinion).

elements of his tort claims." Stastney's Preliminary Objections, 9/20/22, at 3, ¶5.

On April 20, 2023, the trial court entered an order overruling Crawford and Stastney's preliminary objection that collateral estoppel bars Rajan's claims. *See* Trial Ct. Op. at 4 (unpaginated). The trial court sustained Crawford and Stastney's preliminary objections relating to civil conspiracy, tortious interference with contract, and defamation. *See* Trial Ct. Order, 4/20/23. Additionally, the trial court sustained Gola and Gollop's preliminary objections on the grounds that the trial court could not exercise personal jurisdiction over Gola and Gollop. Trial Ct. Op. at 4-6 (unpaginated). Finally, the trial court sustained Crawford's preliminary objection to the abuse of process cause of action. *Id.* at 7-8 (unpaginated). As a result, the trial court dismissed Rajan's third amended complaint with prejudice. *See* Trial Ct. Order, 4/20/23.

Rajan filed a timely notice of appeal on May 5, 2023. The trial court did not order Rajan to file a concise statement of errors complained of on appeal and filed an opinion on May 17, 2023, in which it incorporated by reference its April 20, 2023 opinion accompanying its order sustaining Defendants' preliminary objections and dismissing Rajan's third amended complaint with prejudice. On May 19, 2023, Crawford and Stastney filed separate notices of cross-appeal. Rajan subsequently filed applications to dismiss Crawford and Stastney's cross-appeals. This Court denied Rajan's applications to dismiss

Crawford and Stastney's cross-appeals without prejudice for the merits panel to review the issue. **See** Order, 8/2/23.

Rajan raises the following issue for our review:

Did the trial court err as a matter of law in dismissing all parties and all claims on preliminary objections?

Rajan's Brief at 2 (some formatting altered).[7]

**Tortious Interference with Contractual Relationship**

Rajan first alleges that the trial court erred when it sustained the defendants' preliminary objections relating to his tortious interference with a contractual relationship cause of action. Appellant's Brief at 27-33. Specifically, Rajan argues that the trial court improperly concluded that "a tortious interference claim cannot be raised unless a 'third party' exists." **Id.** at 28. Rajan further argues that the "weighing of evidence and writing of the phrase 'conclusory' even before discovery occurred was entirely improper at this stage." **Id.** at 33 (some formatting altered).

_____

[7] In his brief, Rajan appears to raise six separate issues in his table of contents; however, he identifies only one issue in his statement of question presented. **See** Pa.R.A.P. 2119(a) (stating that "[t]he argument shall be divided into as many parts as there are questions to be argued"). We do not condone Rajan's failure to comply with the Rules of Appellate Procedure, but because the noncompliance does not impede our review, we decline to find waiver on this basis. **See, e.g.**, **Kern v. Kern**, 892 A.2d 1, 6 (Pa. Super. 2005) (stating "[A]s a practical matter, this Court quashes appeals for failure to conform to the Rules of Appellate Procedure only where a failure to conform to the Rules results in the inability of this Court to discern the issues argued on appeal. [The a]ppellants' failure to conform to the Rules of Appellate Procedure regarding [their] brief cannot be condoned, but [the a]ppellants' failure has not hampered our review.") (citation omitted).

We review an order sustaining preliminary objections seeking dismissal of an action *de novo*:

> Our standard of review of an order of the trial court [ruling on] preliminary objections is to determine whether the trial court committed an error of law. When considering the appropriateness of a ruling on preliminary objections, the appellate court must apply the same standard as the trial court.
>
> Preliminary objections in the nature of a demurrer test the legal sufficiency of the complaint. When considering preliminary objections, all material facts set forth in the challenged pleadings are admitted as true, as well as all inferences reasonably deducible therefrom. Preliminary objections which seek the dismissal of a cause of action should be sustained only in cases in which it is clear and free from doubt that the pleader will be unable to prove facts legally sufficient to establish the right to relief. If any doubt exists as to whether a demurrer should be sustained, it should be resolved in favor of overruling the preliminary objections.

> *Fiedler v. Spencer*, 231 A.3d 831, 835-36 (Pa. Super. 2020) (citations omitted). This Court will reverse the trial court's decision regarding preliminary objections only where there has been an error of law or abuse of discretion. When sustaining the preliminary objections will result in the denial of a claim or a dismissal of suit, the preliminary objections may be sustained only where the case is free and clear of doubt. *Hill v. Ofalt*, 85 A.3d 540, 547-48 (Pa. Super. 2014).

*Godlove v. Humes*, 303 A.3d 477, 480-81 (Pa. Super. 2023).

It is well settled that the elements of a cause of action for tortious interference with a contractual relationship are as follows:

(1) [T]he existence of a contractual relationship between the complainant and a third party; (2) an intent on the part of the defendant to harm the plaintiff by interfering with that contractual relationship; (3) the absence of privilege or justification on the part of the defendant; and (4) the occasioning of actual damage as a result of defendant's conduct.

- 8 -

***Burns v. Cooper***, 244 A.3d 1231, 1239 (Pa. Super. 2020) (citation omitted).

This Court has further held:

The second element requires proof that the defendant acted "for the specific purpose of causing harm to the plaintiff." The third element requires proof that the defendant's actions were improper under the circumstances presented, which is determined in accordance with the factors listed in Restatement section 767:

In determining whether an actor's conduct in intentionally interfering with a contract . . . is improper or not, consideration is given to the following factors: (a) the nature of the actor's conduct; (b) the actor's motive; (c) the interests of the others with which the actor's conduct interferes; (d) the interests sought to be advanced by the actor; (e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other; (f) the proximity or remoteness of the actor's conduct to the interference; and (g) the relations between the parties.

Restatement (Second) of Torts § 767 (1979). The second and third elements of the tort of intentional interference with contractual relations are closely related, as our Supreme Court has acknowledged that in most cases the defendant's intentional conduct is done "at least in part for the purpose of protecting some legitimate interest which conflicts with that of the plaintiff.. . ." [***Glenn v. Point Park College***, 272 A.2d 895, 899 (Pa. 1971).]

In applying these factors, Comment b to Section 767 is also instructive:

The issue in each case is whether the interference is improper or not under the circumstances; whether, upon a consideration of the relative significance of the factors involved, the conduct should be permitted without liability, despite its effect of harm to another. The decision therefore depends upon a judgment and choice of values in each situation. This Section states the important factors to be weighed against each other and balanced in arriving at a judgment; but it does not exhaust the list of possible factors.

Restatement (Second) of Torts § 767 cmt. b (1979). In making this "choice of values" in individual cases, our Supreme Court has

- 9 -

advised that when the purpose of the defendant's conduct is, in whole or in part, to protect a legitimate right or interest that conflicts with the interests of the plaintiff, "a line must be drawn and the interests evaluated." *Glenn*, 272 A.2d at 899. Although this evaluation of interests is not always susceptible of "precise definition," it is clear that the central inquiry is whether the defendant's conduct is "sanctioned by the 'rules of the game' which society has adopted." *Id.*

*Phillips v. Selig*, 959 A.2d 420, 429-30 (Pa. Super. 2008) (some citations omitted, formatting altered).

In *Rutherfoord v. Presbyterian-University Hosp.*, 612 A.2d 500 (Pa. Super. 1992), this Court addressed the trial court's order sustaining preliminary objections in a tortious interference with contractual relationship cause of action based on termination of employment. *Rutherfoord*, 512 A.2d at 501-02. In that case, the plaintiff was an employee of the defendant hospital, and plaintiff's duties included serving as a locksmith. *Id.* at 501. After the hospital's purchasing department reported that the plaintiff was attempting to use his position at the hospital to gain personal favors from a prospective vendor, the hospital relieved the plaintiff of his duties as a locksmith, instructed him to return his keys, and terminated the plaintiff's employment. *Id.* at 502.

The plaintiff filed a cause of action against the hospital alleging, *inter alia*, tortious interference with contractual relationship. *Id.* The hospital filed preliminary objections, which the trial court sustained. *Id.* On appeal, this Court held as follows:

A corporation is a creature of legal fiction which can act only through its officers, directors, agents and other employees.

- 10 -

Where employees or agents for the corporation act within the scope of their employment or agency, the employees, the agents and the corporation are one and the same; there is no third party. Accordingly, Pennsylvania law is clear that where, as here, a claim for intentional interference is based upon an alleged contract or business relationship with an employer, and that relationship is terminated by an agent of the employer acting within the scope of his agency, there is no third party involved and no claim will lie.

*Id.* at 508 (citations omitted and some formatting altered).

In the instant case, the trial court explained:

Plaintiff accuses Defendants of intentionally interfering with his employment relationship with Stream. He alleges that "Defendants acted to intentionally harm Plaintiff by preventing him from collecting his wages and accrued salary and enjoy any value of his equity interests." Plaintiff provides a list of accusations:

A. Creating excessive and unjustified obligations on Plaintiff's former employer

B. Trying to improperly seize control over bank accounts of Plaintiff's former employer

C. Unlawfully interfering with prospective investors of Plaintiff's former employer to prevent it from raising additional investment cash;

D. Spreading false rumors about Plaintiff's reputation and honesty to Plaintiff's colleagues and investor[s] and customers of Plaintiff's former employer;

E. Suing him personally with false allegations and basis mainly to aide their efforts for control and to get potential investors in Plaintiff's employer to consult them;

F. Executing a contract to make his former employer an empty shell with none of the assets it developed over 11 years;

G. Executing a contract to prevent Plaintiff's former employer from even using its corporate name any longer; and

- 11 -

> H. Executing a contract that expressly provid[ed] that Plaintiff's equity interests would no longer follow the 3D venture while all other shareholders would continue.
>
> [Rajan's Third Amended Complaint at ¶ 248.] An essential element of tortious interference with contract is interference with the contract from a third party, without privilege or justification. Although Plaintiff had an employment contract with Stream, he also admits in his complaint that he was an owner and officer of Stream (and the bulk of these allegations relate to Plaintiff's ownership interest in Stream, rather than his employment at Stream). Therefore, there is no third party and no tortious interference. Similarly, the actions taken by Defendants were on behalf of Stream, a corporation of which they were either directors, secured creditors, or equity investors. "Where employees or agents for the corporation act within the scope of their employment or agency, the employees, the agents and the corporation are one and the same; there is no third party." [**Rutherfoord v. Presbyterian-Univ. Hosp.**, 612 A.2d 500, 508 (Pa. Super. 1992).] Finally, the malicious intent alleged by Plaintiff is conclusory, as is the allegation of harm resulting from it. For these reasons, this claim is dismissed.

Trial Ct. Op. at 9-10 (unpaginated) (some formatting altered).

Based on our review of the record, we discern no abuse of discretion or error of law by the trial court when it sustained Defendants' preliminary objection to Rajan's tortious interference cause of action. **See Godlove**, 303 A.3d at 480-81. As noted above, Rajan claims that the trial court erroneously concluded that "a tortious interference claim cannot be raised unless a 'third party' exists." Rajan's Brief at 28. This argument is belied by controlling case law, as an element of a tortious interference cause of action is the existence of a contractual relationship between the plaintiff and a third party. **See Burns**, 244 A.3d at 1239.

In his complaint, Rajan states that his brother founded Stream and persuaded Rajan to "join" him. Rajan's Third Amended Complaint at 8, ¶ 32. Ultimately, Stream employed Rajan as the company's chief operating officer, executive vice president, and general counsel. *Id.* at Ex. B. As part of his compensation, Rajan was granted rights to Stream's equity through stock options. *Id.*

Overall, Rajan identifies Defendants as "board members, investors, or prospective investors" in Stream. *Id.* at 3, ¶ 6. Rajan specifically notes that Crawford was a shareholder in Stream, as well as the company's investment broker, and that he was compensated in both cash and equity. *Id.* at 5, ¶ 16. Stastney is identified as a shareholder, former vice chairman of the board of directors, and chief financial officer of Stream. *Id.* at 6, ¶ 17. Both Gola and Gollop are identified in Rajan's third amended complaint as board members of Stream. *Id.*, ¶¶ 18-19, 23.

On this record, we agree with the trial court that because Rajan is not just an employee of Stream, but also an owner and officer, there is no third party, as the Defendants were either officers, directors, or investors in Stream. *See* Trial Ct. Op. at 9-10; citing *Rutherfoord*, 612 A.2d at 501. Accordingly, Rajan failed to sustain a claim for tortious interference with contractual relationship, and he is not entitled to relief.

## Defamation

Rajan next contends that the trial court erred when it sustained the Defendants' preliminary objections relating to the defamation cause of action.

Rajan's Brief at 33-35. Specifically, Rajan argues that "[o]ral defamation is extremely hard to detail before discovery is concluded since specific details will be only shown through depositions of subpoenaed third-party witnesses." *Id.* at 35.

In a defamation action, the plaintiff has the burden of proof regarding the following elements:

(1)  The defamatory character of the communication.

(2)  Its publication by the defendant.

(3)  Its application to the plaintiff.

(4)  The understanding by the recipient of its defamatory meaning.

(5)  The understanding by the recipient of it as intended to be applied to the plaintiff.

(6)  Special harm resulting to the plaintiff from its publication.

(7)  Abuse of a conditionally privileged occasion.

*Lewis v. Philadelphia Newspapers, Inc.*, 833 A.2d 185, 191 (Pa. Super. 2003) (citing 42 Pa.C.S. § 8343).

"Whether a communication can be construed to have a defamatory meaning is a question of law for the court to determine." *Cashdollar v. Mercy Hosp. of Pittsburgh*, 595 A.2d 70, 75 (Pa. Super. 1991) (citation omitted). A communication is considered to be defamatory,

> if it ascribes to another conduct, character or a condition that would adversely affect his fitness for the proper conduct of his proper business, trade or profession. Additionally, the court should consider the effect the statement would fairly produce, or

the impression it would naturally engender, in the minds of average persons among whom it is intended to circulate.

***Constantino v. University of Pittsburgh***, 766 A.2d 1265, 1270 (Pa. Super. 2001) (citations and internal quotation marks omitted). Further, an *en banc* panel of this Court stated a complaint sounding in defamation "must, on its face, identify specifically what allegedly defamatory statements were made, and to whom they were made. Failure to do so will subject the complaint to dismissal for lack of publication." ***Moses v. McWilliams***, 549 A.2d 950, 960 (Pa. Super. 1988) (*en banc*) (citations omitted).

In the instant case, the trial court reached the following conclusion:

In his complaint, [Rajan] alleges that the defendants made defamatory statements about him in the investor lawsuit and to stockholders of Stream. Any alleged defamatory statements made in judicial proceedings is protected by judicial immunity.[8] The possible exception to this immunity would be if the pleadings were published more widely, such as to the press; however, there is no allegation of such publication. Nor is the defamation claim adequately specific; at a minimum, it must set forth content of the statement, as well as exactly to whom it was made and by whom. [Rajan] has not done so, either in his third amended complaint [or] in the attached affidavits. Accordingly, this claim is stricken.

Trial Ct. Op. at 7 (unpaginated).

Following our review of the record, we discern no abuse of discretion by the trial court in sustaining Defendants' preliminary objections to Rajan's claim

---

[8] ***See, e.g., Clodgo by Clodgo v. Bowman***, 601 A.2d 342, 344 (Pa. Super. 1992) (explaining that statements made in the pleadings, at trial, or in argument in the regular course of judicial proceedings, which are pertinent and material to the relief sought, are entitled to judicial immunity and there is no civil liability for making such statements).

for defamation. *See Godlove*, 303 A.3d at 480-81. The record reflects that in his complaint, Rajan alleged that "Defendants communicated defamatory comments about [Rajan] by impugning his reputation by referring to him as part of the 'rajan [sic] family' and they all were dishonest and embezzlers." Third Amended Complaint at 45, ¶ 263. Rajan further alleges that these comments were published in both e-mails and oral communications to "colleagues of [Rajan], investors and vendors of [Stream] and even customers." *Id.* at 46, ¶ 264. Rajan contends that the defendants "spoke to many investors to impugn [Rajan's] reputation in order to solicit their investment money and prevent money from going to [Stream]." *Id.* at ¶ 266. Rajan also alleges that the defendants told "most employees" that "the Rajans were dishonest to get the employees to support Defendants' actions." *Id.* at ¶ 271.

As exhibits to his complaint, Rajan included "declarations under penalty of perjury" from Mark Savarese and Joseph Corso. *See generally id.* at Ex. D. Savarese identified himself as an investor in Stream. *Id.* He stated that he was "solicited by other investors in Stream[]" to join a lawsuit against the Rajan family. *Id.* "As part of their solicitation, they informed me that the Rajan [f]amily could not be trusted with investor monies and there may have

been theft of [sic] embezzlement that occurred." **Id.**  Savarese stated that these allegations "were made in numerous conversations." **Id.**[9]

We conclude that Rajan's allegations are impermissibly vague.  Rajan's complaint does not indicate how many individuals are investors in Stream. Moreover, the complaint does not specifically attribute the statements allegedly made to **any** of the named defendants in his cause of action. Accordingly, Appellant has failed to plead with sufficient specificity that any of the defendants in this case published any defamatory statements.  **See Lewis**, 833 A.2d at 191.  Therefore, Appellant is not entitled to relief.

### Abuse of Process

In his next issue, Rajan argues that the trial court erred when it sustained Crawford's preliminary objections relating to the abuse of process claim.  Rajan's Brief at 35-38.  Specifically, Rajan alleges that Crawford "filed the Crawford Lawsuit only as a tactic—leverage against [Rajan] in the overall conspiracy.  Adding [Rajan's] elderly parents to the Crawford Lawsuit over two months later was only motivated to increase pressure on [Rajan] to succumb." **Id.** at 35-36.

In their brief, Crawford and Stastney contend that the trial court "correctly concluded [that] allegations concerning the mere initiation of a

---

[9] Corso's declaration, as it appears in the certified record, is illegible.  **See** Rajan's Third Amended Complaint, Ex. D.; Crawford and Stastney's Brief at 28.

lawsuit are addressed by a Dragonetti[10] action, not a claim of abuse of process." Crawford and Stastney's Brief at 35 (citations omitted). Crawford and Stastney further argue that Rajan failed to state either a Dragonetti or abuse of process cause of action. *Id.* at 36. Specifically, Crawford and Stastney argue that the mere act of adding Rajan's parents to a lawsuit is equivalent to initiating a lawsuit against them. *Id.* at 39.

This Court has summarized the tort of abuse of process as follows:

The tort of abuse of process is defined as the use of legal process against another primarily to accomplish a purpose for which it is not designed. To establish a claim for abuse of process it must be shown that the defendant (1) used a legal process against the plaintiff, (2) primarily to accomplish a purpose for which the process was not designed; and (3) harm has been caused to the plaintiff. This tort differs from that of [a Dragonetti claim] in that, in the former, the existence of probable cause to employ the particular process for its intended use is immaterial. The gravamen of abuse of process is the perversion of the particular legal process for a purpose of benefit to the defendant, which is not an authorized goal of the procedure. In support of this claim, the [plaintiff] must show some definite act or threat not authorized by the process, or aimed at an objective not legitimate in the use of the process . . .; and there is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions.

In evaluating the primary purpose prong of the tort, there must be an act or threat not authorized by the process, or the process must be used for an illegitimate aim such as extortion, blackmail, or to coerce or compel the plaintiff to take some collateral action.

---

[10] *See* 42 Pa.C.S. §§ 8351-8354, commonly referred to as the Dragonetti Act. *Raynor v. D'Annunzio*, 243 A.3d 41, 43 n.1 (Pa. 2020). The Dragonetti Act encompasses the tort of wrongful use of civil proceedings. 42 Pa.C.S. § 8351.

*Clausi v. Stuck*, 74 A.3d 242, 248-49 (Pa. Super. 2013) (citations omitted and some formatting altered).

This Court has observed that, "[t]he word 'process' as used in the tort abuse of process has been interpreted broadly, and encompasses the entire range of procedures incident to the litigation process.  Thus, it is broad enough to include discovery proceedings, the noticing of depositions and to the issuing of subpoenas." *Rosen v. American Bank of Rolla*, 627 A.2d 190, 192 (Pa. Super. 1993) (citations omitted and formatting altered).  By comparison, the *Rosen* Court explained that, "[t]he essence of the tort of wrongful use of civil proceedings is the institution of a civil action for a malicious purpose and without probable cause." *Id.* at 193 (citing *Weiss v. Equibank*, 460 A.2d 271, 276 (Pa. Super. 1983) (citation omitted).  Applying Pennsylvania law, the United States District Court for the Eastern District of Pennsylvania further explained:

> In contrast to abuse of process, a malicious use of civil process claim specifically addresses situations where a party wrongfully initiates a suit against another.  Although malicious use of civil process was originally a common law action, it has subsequently been codified by the Pennsylvania [General Assembly].  A party suing under this statute must prove that the primary purpose for which the proceedings were brought was not that of securing the proper discovery, **joinder of parties** or adjudication of the claim on which the proceedings were raised.

***Cameron v. Graphic Management Associates, Inc.***, 817 F. Supp. 19, 21 (E.D. Pa. 1992) (citations omitted and formatting altered, emphasis added).[11]

> Here, the trial court reached the following conclusion:

> Plaintiff alleges that Defendant Crawford filed the Investor Lawsuit for an improper purpose; that is, to gain leverage over Plaintiff in the negotiations over Stream. That, as Crawford notes, would not constitute abuse of process, but wrongful use of civil proceedings, which is not [pled] here. The specific bad act Plaintiff alleges is the naming of Plaintiff's parents as additional defendants in the Investor Lawsuit. His parents, however, were investors in Stream, and so were proper defendants there—it cannot be the specific bad act even if done maliciously. Accordingly, this claim is dismissed.

Trial Ct. Op. at 8 (unpaginated).

Following our review of the record, we discern no abuse of discretion or error of law by the trial court in sustaining Crawford's preliminary objections to Rajan's abuse of process cause of action. ***See Godlove***, 303 A.3d at 480-81. In his complaint, Rajan only alleges that Crawford is liable for abuse of process by joining Rajan's parents to the Investor Lawsuit. At no point in his compliant does Rajan allege that Crawford attempted to use the discovery process, noticed any depositions, or issued any subpoenas relating to Rajan's parents for an improper purpose. ***See Rosen***, 627 A.2d at 192. As noted by the trial court, as stated, Rajan's cause of action falls under the wrongful use of civil proceedings tort, which is contemplated by the Dragonetti Act;

---

[11] "Although not binding on us, we may cite federal authority for its persuasive value." ***Toppy v. Passage Bio, Inc.***, 285 A.3d 672, 690 n.7 (Pa. Super. 2022) (citation omitted).

therefore, Rajan has failed to state a claim for abuse of process. **See** Trial Ct. Op. at 8 (unpaginated); **Rosen**, 627 A.2d at 193; **Cameron**, 817 F. Supp. at 21. Accordingly, Rajan is not entitled to relief.

### Civil Conspiracy

Next, Rajan argues that if any of the above causes of action are reinstated by this Court, "then the claim of civil conspiracy should also be reinstated." Rajan's Brief at 17-18.

This Court has defined civil conspiracy as follows:

> To state a cause of action for civil conspiracy, the following elements are required: (1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose; (2) an overt act done in pursuance of the common purpose; and (3) actual legal damage. Proof of malice or an intent to injure is essential to a proof of conspiracy.

**Strickland v. University of Scranton**, 700 A.2d 979, 987-88 (Pa. Super. 1997) (citations omitted and formatting altered). This Court has also held that "absent a civil cause of action for a particular act, there can be no cause of action for civil conspiracy to commit that act." **Goldstein v. Phillip Morris, Inc.**, 854 A.2d 585, 590 (Pa. Super. 2004) (citation omitted). **See also Phillips**, 959 A.2d at 437; **Bayonowski v. Capital Area Intermediate Unit**, 215 F.3d 396, 405-06 (3d Cir. 2000) (applying Pennsylvania law, stating, "The rule that civil conspiracy may not exist without an underlying tort is a common one. Indeed, we are unaware of any jurisdiction that

- 21 -

recognizes civil conspiracy as a cause of action requiring no separate tortious conduct").

In the instant case, the trial court concluded that because Rajan's civil conspiracy claim "relies upon the tortious interference claim, [the civil conspiracy claim] is stricken as well." Trial Ct. Op. at 8 (unpaginated). On this record, we discern no abuse of discretion or error of law by the trial court. **See Godlove**, 303 A.3d at 480-81. Indeed, the basis of Rajan's civil conspiracy claim was the separate tortious interference with contract cause of action. **See** Rajan's Third Amended Complaint at 35, ¶ 215; 37, ¶ 229. Because the trial court did not err when it sustained Defendants' preliminary objections to the tortious interference with contract cause of action, Rajan has likewise failed to articulate an underlying cause of action to support a civil conspiracy cause of action. **Goldstein**, 854 A.2d at 590; **Phillips**, 959 A.2d at 437; **Bayonowski**, 215 F.3d at 405-06. Therefore, he is not entitled to relief.

## Cross Appeals and Personal Jurisdiction

Crawford and Stastney contend that Rajan is collaterally estopped from raising the claims in the instant case. Crawford and Stastney's Brief at 56-57. Crawford and Stastney specifically argue that the issues raised by Rajan were addressed by the Supreme Court of Delaware, and therefore, cannot be re-litigated in Pennsylvania. **Id.** at 58-60. Additionally, Rajan contends that the trial court erred when it concluded that the Court of Common Pleas of

Philadelphia County did not have personal jurisdiction over Defendants Gola and Gollop. Rajan's Brief at 19-23.

In Pennsylvania, "[t]he mootness doctrine requires that an actual case or controversy must be extant at all stages of review, not merely at the time the complaint is filed." ***Public Defender's Office of Venango County v. Venango County Court of Common Pleas***, 893 A.2d 1275, 1279 (Pa. 2006) (citation omitted). In light of our disposition affirming the trial court's order sustaining preliminary objections for all causes of action raised by Rajan in his third amended complaint, we need not address the merits of the personal jurisdiction issue, or the cross-appeal raised by Crawford and Stastney, as both of those issues are moot.[12] ***See id.*** Accordingly, neither Rajan, Crawford, nor Stastney are entitled to relief.

For these reasons, we affirm the trial court's order sustaining Defendants' preliminary objections and dismissing Rajan's third amended complaint with prejudice. We further deny Rajan's application to dismiss Crawford and Stastney's cross-appeals, as our disposition renders those claims moot.

_____

[12] While our Supreme Court has recognized exceptions to the mootness doctrine, none apply to the instant case, as these issues are not capable of repetition while evading court action, important to the public interest, or an instance where a party will suffer some detriment without this Court's decision. ***See Sierra Club v. Pennsylvania PUC***, 702 A.2d 1131, 1135 (Pa. Cmwlth. 1997), *affirmed*, 731 A.2d 133 (Pa. 1999) (affirming on the Commonwealth Court's opinion); ***see also Maryland Cas. Co. v. Odyssey***, 894 A.2d 750, 756 n.2 (Pa. Super. 2006) (stating that although not binding on this Court, we may cite to decisions of the Commonwealth Court as persuasive authority).

Order affirmed. Rajan's application to dismiss Crawford and Stastney's cross-appeals denied as moot. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 7/18/2024